HEIDBRINK, Respondent, v. UNITED RAILWAYS
COMPANY, Appellant.

### St. Louis Court of Appeals, May 26, 1908.

1. **JURIES: Challenge for Cause.** Where a juror in his examination on *voir dire* showed that he would be inclined to give "the benefit of the doubt" to one party, it was error to overrule the challenge of such juror for cause by the other party.

2. **PERSONAL INJURIES: Instruction on Element of Damage: Evidence.** In an action for damages on account of personal injuries, an instruction authorizing a recovery for expense incurred for medical attention, nursing, etc., was error, where there was no evidence that such expense was incurred.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest* and *T. E. Francis* for appellant.

The court erred in overruling defendant's challenge of juror Meyer for cause. Billmeyer v. Transit Co., 108 Mo. App. 6; Theobald v. Transit Co., 191 Mo. 395; Gibney v. Transit Co., 204 Mo. 704.

*T. D. Cannon* for respondent.

Rudolph Meyer did not sign the verdict, and no error was committed. Williamson v. Transit Co., 202 Mo. 368.

BLAND, P. J.—Olive street runs east and west through the center of the city of St. Louis. Sarah street is in the western part of the city and runs north and south, crossing Olive street at right angles. In 1906, defendant operated a street railroad over Olive street, and the St. Louis & Suburban Railway Company operated one over Sarah street. The usual place to stop cars running west on Olive street, to receive and dis-

charge passengers, is the west corner of the street cross-
ing.  On February 11, 1906, plaintiff, in company with
her sister, boarded a west-bound Olive street car, at
about ten o'clock p. m., to be carried to Sarah street.
She and her sister occupied the back seat in the car.
Just before the car reached Sarah street, plaintiff's
sister signaled the conductor to stop the car at the Sa-
rah street crossing.   The conductor gave the motor-
man a bell to stop and the speed of the car was slack-
ened before it reached the railway tracks on Sarah street
and plaintiff arose from her seat and walked out of the
door to the rear platform.   After reaching the plat-
form she was either thrown off by a lurch of the car, or
walked off and fell upon the street.   Plaintiff was badly
injured and the action is to recover her damages.   The
petition alleges, and plaintiff's evidence tends to show,
that plaintiff arose from her seat when the car was en-
tering the Sarah street crossing, walked to the platform
and stopped and stood at the door, holding to the door
handle, waiting for the car to reach the corner and stop
to allow her to get off; that as the car crossed the Sarah
street tracks it was given a sudden propulsion from
which an unusual jolt and jerk resulted, causing plain-
tiff to lose her hold on the door handle and to be thrown
off the car to the street.

The evidence for defendant, coming from passengers
standing on the back platform and a bystander on the
street, tends to show there was no spurt of speed and
no unusual jerking or jolting of the car as it crossed
over the Sarah street tracks, and that plaintiff did not
stop on the platform but walked off the car while it was
in motion and fell to the street.  Ten of the jurors signed
a verdict for plaintiff and assessed her damages at
$2,500.

1.   Error is assigned in the action of the court in
overruling defendant's challenge for cause of juror Mey-
er.   The examination of this juror on his *voir dire* dis-

closed the fact that his mother, about one year previous to the trial, was accidentally struck by one of defendant's cars and injured; that she and the juror presented a claim to the company on account of the injury and it was settled, but to use the language of the juror, "not exactly settled satisfactorily." The juror stated that the settlement as made "would not exactly" influence him against the company in any way but he thought it would "almost cause" him to give plaintiff "the benefit of the doubt;" that he thought he could give a fair decision in the case and could consider the testimony of both sides, and give the evidence the same consideration as he would any controversy between man and man. On further examination of this juror, the following occurred:

"Q. I understood you to state a while ago that you would lean toward the plaintiff in this case on account of that accident having occurred to your mother; didn't you state that? A. Well, I suppose if the testimony was about equally balanced, I would have to lean on one side.

"Q. So that if the evidence for the defendant would equally balance the evidence for the plaintiff in your judgment, you would give the benefit of the doubt to the plaintiff and vote to return a verdict in her favor, would you not? A. Well, I suppose I would. I would have to put the doubt either one way or the other.

"Q. So you will go into the jury box, if selected as a juror, with a feeling of partiality in favor of the plaintiff? A. No, not exactly."

We think the examination of this juror clearly shows that his mind was biased against defendant to such an extent as to disqualify him. He stated over and over that if the evidence was equally balanced he would give the plaintiff "the benefit of the doubt;" in other words, that to his thinking the plaintiff would not be required to prove her case by a preponderance of

Heidbrink v. United Railways Co.

the evidence, as the law requires she should to entitle her
to a verdict. Lord MANSFIELD said, "A juror should be
as white as paper and know neither plaintiff nor de-
fendant, but judge of the issue merely as an abstract
proposition upon the evidence produced before him. He
should be superior even to a suspicion of partiality."

Judge MARSHALL, in Theobald v. Transit Co., 191
Mo., after reviewing many cases, at page 428, said: "The
streams of justice should be kept pure and free from
prejudice. In the administration of justice, the courts
and all judges, as well as the jurors, should, as far as
human precaution can avail, be kept free from bias or
prejudice."

Although Meyer's answers to some of the questions
propounded to him were to the effect that he would be
governed by the evidence and instructions of the court,
if selected as a juryman, yet his examination as a whole
shows he was biased against defendant and could not be
a fair juryman, though he might be an honest one, and
we think the court erred in overruling defendant's chal-
lenge.

2.  The third clause of the instruction on the meas-
ure of damages is as follows:

"For any expense necessarily incurred for medi-
cines, medical attention or nursing which the jury may
believe from the evidence the plaintiff has sustained or
will hereafter sustain by reason of said injuries and di-
rectly caused thereby."

There was no evidence that plaintiff incurred any
expense for nursing and for this reason the instruction
is erroneous.

The judgment is reversed and the cause remanded.
All concur.