OF THE

## STATE OF MISSOURI

AT THE

APRIL TERM, 1910.

---

*(Continued from Volume 228)*

---

## EMIL RADTKE v. ST. LOUIS BASKET & BOX COMPANY, Appellant.

Division One, June 14, 1910.

1. **NEGLIGENCE: Combined Act of Master and Fellow-Servant: Demurrer.** Where the injury was the result of the combined negligent act of the master and the negligent act of a fellow-servant, no demurrer to the evidence should be sustained. So that where the petition charged that the master negligently furnished plaintiff an unsafe place in which to work, and the evidence shows that a motor shaft was kept running in the factory and plaintiff was required to stand on a ladder and to hold a band off of this shaft while the master's foreman repaired a belt encircling the shaft, and that the foreman in doing so permitted the band to run over the edge of a pulley on a machine to which the band belonged, and thereby the band became taut, caught plaintiff's hand between the band and shaft,

and injured him, no demurrer to the evidence should be sustained, even though it be admitted the foreman was, for the moment, a fellow-servant, for the motor shaft was kept in motion, and that was the act of the master.

2. ———: **Dangerous Place: Instruction.** Where both a dangerous place and a careless method of doing the work were charged, and were not without proof, an instruction telling the jury that if defendant's foreman sent plaintiff into an unsafe and dangerous place to work, and directed plaintiff to assist in a dangerous and unsafe method of mending the belt in question, and the jury found that such act of the defendant was the occasion of the injury, then a verdict must be returned for plaintiff, was proper.

3. ———: **Instruction: Measure of Damages: Medicine.** Where the petition alleges no money paid out or expenses incurred for medicine, an instruction which permits a recovery for medicine is error.

4. ———: ———: ———: **Medical Expense.** Where the petition alleges plaintiff had incurred an expense of a definite sum for medical attendance, an instruction which authorizes a recovery for medical services without limiting the recovery to the amount claimed, or to the reasonable value thereof, is erroneous.

5. ———: ———: ———: **Loss of Earnings.** Where the petition charged that plaintiff's loss of earnings in the past was nine dollars per week and also charged that he "will continue to lose said sum in the future for an indefinite period," an instruction which permits a recovery for loss of earnings without any limitations whatever is erroneous. His recovery in that respect for the future was limited by his petition to nine dollars per week. Nor will the court undertake to cure the error by requiring a *remittitur*, where the verdict is for such a sum as would bespeak close consideration as to whether under all the evidence it is excessive.

6. ———: ———: **Vice-Principal or Fellow-Servant: Matter of Law.** Where it is undisputed that the party doing the negligent act was a foreman, then, if the act done or the act omitted was one pertaining to the personal duties of the master toward his servant, and the foreman did such act, the court should instruct the jury that such act was that of the master, and not the act of a fellow-servant. Where the act is described to the court, as having been done by the foreman, it is the duty of the court to declare to the jury, as a matter of law, whether said act was that of the master or that of a fellow-servant, and not leave it to the jury to say whether the particular negligent act was that of the one or the other.

Radtke v. Basket & Box Co.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields, Judge.*

REVERSED AND REMANDED.

*Seddon & Holland* for appellant.

(1) The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by defendant at the close of all the evidence. Grattis v. Railroad, 153 Mo. 380; Reichl v. Flynn, 196 Pa. St. 263; Dayharsh v. Railroad, 103 Mo. 570; Fogarty v. Transit Co., 180 Mo. 490; Hawk v. Lumber Co., 166 Mo. 121; Garland v. Railroad, 85 Mo. 581; Gaul v. Beckstein, 173 Ill. 183; Reed v. Stockmeyer, 74 Fed. 186; Hussey v. Coger, 112 N. Y. 614; Klochinsky v. Lumber Co., 93 Wis. 417; Gain v. Railroad, 101 Tenn. 380; Railroad v. Mauzy, 98 Va. 629; McElligott v. Randolph, 61 Conn. 157; Railroad v. Torry, 58 Ark. 277; Holtz v. Railroad, 69 Minn. 524; Lindvall v. Woods, 41 Minn. 217; Daves v. Railroad, 98 Cal. 19; Railroad v. Charless, 162 U. S. 360. (2) The court erred in giving instruction 1 at the instance of plaintiff. (a) Because it is too general in its scope. Mulderig v. Railroad, 116 Mo. App. 655; Allen v. Transit Co., 81 S. W. 1142. (b) The instruction is erroneous because it is not limited to the specifications of negligence contained in the petition. McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 514; Mueller v. Shoe Co., 109 Mo. 506; Adolph v. Pretzel Co., 100 Mo. 199; Evans v. Railroad, 222 Mo. 435; Beave v. Transit Co., 212 Mo. 331. (c) Because there was no testimony upon which to base said instruction. Stone v. Hunt, 114 Mo. 66; Evans v. Interstate Co., 106 Mo. 594; Yarnell v. Railroad, 113 Mo. 570. (3) The court erred in giving instruction 2 at the instance of plaintiff. (a) Because there was no evidence upon which to base said instruction. (b) Because it was error to leave to the jury the

determination of whether or not the foreman at the time was acting as vice-principal. (4) The court erred in giving instruction 14 of its own motion. (a) Because it allows a recovery for medicine when there was no pleading or evidence that the plaintiff was put to any expense for medicine. Heidebrink v. Railroad, 113 S. W. 233. (b) Because it allows unlimited recovery for lost earnings when the petition only claimed lost earnings at the rate of $9 per week. Heinz v. Railroad, 122 S. W. 347. (c) Because it allows unlimited recovery for medical services when the petition claims loss of $21. (d) Because it allows recovery for any liability for medicines and medical services without limiting recovery to reasonable liability. (e) Because it assumes that plaintiff sustained pain and suffering.

*Nagel & Kirby, Scullin & Chopin* and *Truman P. Young* for respondent.

(1) It is the duty of the master to furnish the servant with a reasonably safe place in which to work. If he, whether acting by himself or through a vice-principal or foreman, sends a servant into a dangerous place, and the servant is injured while there, the master is liable. And this is especially true if the servant is sent out of the usual line of his employment into the dangerous place. Nash v. Brick Co., 109 Mo. App. 600; Zellars v. Water & Light Co., 92 Mo. App. 107; Herdler v. Stove Co., 136 Mo. 3; Doyle v. Trust Co., 140 Mo. 18; Mitchell v. Railroad, 108 Mo. App. 142; Van Esler v. Cigar Co., 108 Mo. App. 621; Thompson v. Railroad, 86 Mo. App. 141; Browning v. Kasten, 107 Mo. App. 59; Bradley v. Railroad, 138 Mo. 293; Stevens v. Railroad, 86 Mo. 221, 96 Mo. 207; Keegan v. Kavanaugh, 62 Mo. 230; Foster v. Railroad, 115 Mo. 177; Weston v. Mining Co., 105 Mo. App. 702; Haworth v. Telephone Co., 105 Mo. App. 161; Dane v. Irwin, 172 Mo. 306; Sullivan v. Railroad,

107 Mo. 66; Moore v. Railroad, 85 Mo. 588; Burkhard v. Rope Co., 217 Mo. 466; Meily v. Railroad, 215 Mo. 566; Garaci v. Construction Co., 124 Mo. App. 709; Combs v. Construction Co., 205 Mo. 367; Rigsby v. Supply Co., 115 Mo. App. 313; Bokamp v. Railroad, 123 Mo. App. 270. (2) The master is liable for an injury to the servant occasioned by the act of a foreman done in the exercise of his authority as foreman, whether the act be one of omission or commission, the failure to perform a duty which the law places upon a master, or an affirmative act done in his representative capacity and in the exercise of the authority derived from the master. Fogarty v. Railroad, 180 Mo. 490; Reed v. Railroad, 94 Mo. App. 380; Buckalew v. Railroad, 107 Mo. App. 575; Haworth v. Railroad, 94 Mo. App. 315; Hutson v. Railroad, 50 Mo. App. 300; Russ v. Railroad, 112 Mo. 45; Dayharsh v. Railroad, 103 Mo. 570; Strode v. Conkey, 105 Mo. App. 12; Bien v. Transit Co., 108 Mo. App. 399; Warren v. Railroad, 113 Mo. App. 498; Gormley v. Iron Works, 61 Mo. 492; Hollweg v. Bell Telephone Co., 195 Mo. 149; Donnelly v. Mining Co., 103 Mo. App. 349; Schroeder v. Railroad, 108 Mo. 327; Miller v. Railroad, 109 Mo. 356; Grattis v. Railroad, 153 Mo. 392; Railroad v. May, 108 Ill. 288; Fanter v. Clark, 15 Ill. App. 475; Brick Co. v. Savkowiak, 148 Ill. 580; Fraser v. Schroeder, 163 Ill. 464; Morton Bros. v. Nadabock, 190 Ill. 595; Steel Co. v. Schymanowski, 162 Ill. 447; Schaub v. Railroad, 106 Mo. 74; Mining Co. v. Doris, 90 Tenn. 711; 1 Shearman & Redfield on Negligence (5 Ed.), par. 226. (3) The master is liable for an injury to a servant resulting from his negligence, even though other causes, such as the negligence of a fellow-servant, concurred in bringing about the injury. Bluedorn v. Railroad, 108 Mo. 439; De Weese v. Mining Co., 54 Mo. App. 476; Craig v. Railroad, 54 Mo. App. 523; Ermer v. Brewing Co., 69 Mo. App. 17; Foster v. Railroad, 115 Mo. 165; Young v. Iron Co., 103 Mo. 324; Kennedy

v. Gas Light Co., 215 Mo. 688; Buckner v. Horse & Mule Co., 120 S. W. 766. (4) The question whether plaintiff was injured by the foreman while acting as foreman, was properly submitted to the jury. Fogarty v. Transfer Co., 180 Mo. 490; Bennett v. Lime Co., 124 S. W. 608; Burkhard v. Rope Co., 217 Mo. 483. (5) The question of the cause of the injury was for the jury. Glasscock v. Dry Goods Co., 106 Mo. App. 656; Booth v. Air Line, 76 Mo. App. 522; Ruth v. Railroad, 70 Mo. App. 190; Reichla v. Gruensfelder, 52 Mo. App. 48; Blanton v. Dold, 109 Mo. 73; Rogers v. Printing Co., 103 Mo. App. 683. (6) The measure of damages was properly submitted by the court in a general instruction, the loss of earnings being for both the past and the future. Lindsay v. Kansas City, 195 Mo. 166; Kennedy v. Gas Light Co., 215 Mo. 701; Browning v. Railroad, 124 Mo. 55; Swearingen v. Mining Co., 212 Mo. 538; Abbit v. Transit Co., 104 Mo. App. 540; Tandy v. Transit Co., 178 Mo. 240; Waddell v. Railroad, 213 Mo. 18; Gerdes v. Foundry Co., 124 Mo. 347; Smiley v. Railroad, 160 Mo. 629. (7) The damages assessed by the jury were not excessive. Phippin v. Railroad, 196 Mo. 321; Latson v. Railroad, 192 Mo. 468; Chitty v. Railroad, 166 Mo. 435; Devoy v. Railroad, 192 Mo. 198; Dougherty v. Railroad, 97 Mo. 641; Griffith v. Railroad, 98 Mo. 168; Goldsmith v. Holland Building, 182 Mo. 597; Hollenbeck v. Railroad, 141 Mo. 97; Brady v. Railroad, 206 Mo. 509; Swearingen v. Mining Co., 212 Mo. 539; Oglesby v. Railroad, 150 Mo. 161; Scullin v. Railroad, 184 Mo. 695; Newcomb v. Railroad, 182 Mo. 867.

GRAVES, J.—Action for personal injuries, with damages alleged in the aggregate sum of $25,000. Verdict and judgment in favor of plaintiff for $10,000, from which defendant has appealed. As indicated by the name, defendant is a corporation engaged in the manufacturing business and to that end had and ope-

rated a factory in the city of St. Louis, in which factory plaintiff was one of its employees. His employment was through one Albert Schmidt, a foreman of the defendant. The petition is minute in detail and of great length, but boiled down, it avers: that plaintiff was working on a machine in said shops or factory known as a cutting machine; that in so doing he was under the direction of the foreman, Schmidt; that in the same room were numbers of other machines; that running through the room and for the purpose of operating all these machines was an axle or motor shaft; that the sundry machines in the room were operated by means of belts running down from this motor shaft; that this motor shaft was kept in continuous and rapid motion; that the cutting machine on which plaintiff worked was operated by a belt from this motor shaft, that came down the distance of ten feet at an angle of about thirty degrees, and then was placed upon a pulley fifteen inches or more in diameter; that the pulley was upon a shaft upon the cutting machine, and about twelve or fifteen inches from the end thereof; that at the end of the shaft was a handwheel, eighteen or twenty inches in diameter, by which the machine could be operated by hand; that in operating the machine by the belt, the belt was given one-half twist in its course; that said belt was negligently constructed of two or three pieces of leather of different breadths, and was laced together in several places; that by reason of the different widths of the pieces some would project out one-half inch further than the other portions, making dangerous and uneven corners on both sides of the belt; that defendant knew of this condition, or by the exercise of ordinary care might have known of it; that plaintiff was inexperienced and aged about twenty-one years, which fact was known to defendant; that he knew nothing of mending belts, except what he had seen. The particular accident with

its surrounding circumstances are then thus described in the petition:

"Plaintiff states that on or about the 27th day of September, 1904, at about 7:25 o'clock in the forenoon of said day, the said belt connecting the said motor shaft with the said pulley of the cutting machine broke and that it became necessary to relace the same.

"That the same foreman, Albert Schmidt, carelessly and negligently directed the plaintiff to lean a ladder against the revolving motor shaft, aforesaid, and to carry said belt up said ladder and replace it over the revolving motor shaft, and to then hold it hanging over the said shaft, but in such manner that it should not touch said shaft, in order that he, the said foreman, standing on the floor below, might then relace the said belt.

"Plaintiff states that he, in the exercise of due care, obeyed the directions of the said foreman, and did lean a ladder against the said motor shaft and did carry said belt up the said ladder and place it again over the said shaft. That said foreman thereupon, with the assistance of an employee in said factory, proceeded to relace the said belt, and for that purpose did carelessly and negligently place the said belt around the shaft connecting the pulley of said cutting machine with the handwheel aforesaid, and that while the said belt so encircled the said motor shaft above and the said shaft of said cutting machine below, the said foreman did carelessly and negligently proceed to mend the said belt and to relace the same; this plaintiff in the meantime, in the exercise of due care, holding the said belt up so that it might not touch the said revolving motor shaft.

"That the ladder so furnished by the defendant to the plaintiff as aforesaid, was broken and defective, that one leg thereof had been broken off and that a piece of wood had been nailed on to take the place of said leg, but that said piece of wood was improperly

nailed on, so that the said ladder did not stand firmly, but was shaky and unsteady, which said dangerous condition of said ladder defendant well knew, or by the exercise of ordinary care ought to have known.

"Plaintiff states that while he held the belt from touching the revolving motor shaft, in manner as aforesaid, defendant's foreman, Albert Schmidt, with the assistance of the employee aforesaid, having placed said belt around the small shaft of the cutting machine, proceeded to mend and relace the same, but that said foreman negligently and carelessly proceeded with said work, and while in the act of so mending the belt, said foreman negligently and carelessly drew the said belt and caused said belt to be drawn taut and down against the motor shaft.

"That immediately upon touching said motor shaft, said belt began to revolve at an extremely rapid rate of speed on said shaft; that no notice or warning was given to the plaintiff that said belt was about to be drawn taut and to be made to revolve rapidly around the said motor shaft. That thereupon plaintiff's hand was immediately caught by the moving belt and drawn between the belt and the motor shaft and was forced and drawn against said shaft, and became pinioned between said shaft and belt, and that plaintiff was thereby pulled from said ladder. That said belt so catching the right arm of plaintiff held him firmly against and bound him to the said motor shaft, and that he was whirled around the said motor shaft several times, after which he fell and struck the floor and said cutting machine with great violence, by which fall several of said plaintiff's ribs were broken.

"Plaintiff states that by reason of the sudden starting of said machinery and belt without notice or warning to the plaintiff, and by reason of said belt being so drawn taut and against the said motor shaft, and by reason of the defective, shaky and dangerous condition of said ladder, plaintiff's right hand and arm

were caught by said belt and by the projections thereon aforesaid, and drawn in between said shaft and belt.

"That during the mending of the belt the said foreman, Albert Schmidt, continued in charge of work in said factory and continued to give orders, both to the plaintiff and to the said employee assisting him in the lacing of the belt.

"Plaintiff states that by reason of the said catching of his arm, and of said fall, he was severely wounded, bruised, lacerated and maimed, and his right arm was severed from his body at a point between the shoulder and the elbow thereof, and that the remainder of said arm was so crushed, lacerated and torn, that it was shortly afterwards amputated at a point a few inches from the shoulder.

"Plaintiff states that defendant, St. Louis Basket & Box Company, was negligent in failing to give plaintiff proper instructions, as aforesaid, and sending plaintiff into a place and position which was dangerous and unsafe, and which plaintiff knew, or by the exercise of ordinary care could have known to be unsafe and dangerous, and in directing plaintiff through its said foreman, Albert Schmidt, to ascend said ladder and hold said belt in the manner aforesaid; and also in furnishing the plaintiff a shaky, unsteady and dangerous condition of said ladder defendant well knew, or by the exercise of ordinary care might have known, and also in permitting said motor shaft to revolve while the belt was being mended, as aforesaid, and also in setting up and maintaining a defective belt made of two or three pieces of leather of different widths, thereby making corners where the said pieces of leather were joined, which defective condition of said belt the defendant well knew, or by the exercise of ordinary care might have known; and also in carelessly and negligently through its said foreman, mending said belt in manner aforesaid, and carelessly and negligently drawing said belt and causing said belt to

be drawn down upon the said motor shaft, and in suddenly, without notice or warning to plaintiff, starting the said belt and machinery in manner aforesaid.''

The petition then charges that for medical attention he had incurred an expense of $21. Then follows this allegation:

''Plaintiff states that by reason of said injury he has lost in earnings, since the date thereof, to-wit, September 27, 1904, the sum of nine dollars per week, and will continue to lose said sum in the future for an' indefinite period.

''That his earning capacity is greatly impaired and perhaps entirely gone by reason of said injury.''

The answer was (1) a general denial, (2) a plea of contributory negligence and (3) a plea of assumption of risk. Reply, general denial. Such were the issues made. The evidence will be noted in connection with the points urged.

I. Defendant earnestly insists that a demurrer to the testimony should have been sustained, and a finding by the defendant directed by the court. This necessitates a thorough review of the evidence, and in addition an analysis of the pleadings.

The negligent acts complained of in the petition may be thus summarized, (1) failure to give plaintiff proper instructions under the circumstances, (2) sending plaintiff into a place of danger, (3) furnishing plaintiff with an unsafe ladder, (4) having and maintaining a defective belt made up of uneven widths, (5) permitting said motor shaft to revolve whilst the belt was being mended, (6) in permitting the belt to get over the pulley and thus start the machinery in a way to hurt and injure the plaintiff, and (7) in negligently mending such belt in the manner in which it was done.

Defendant urges that the evidence for plaintiff fails to establish any of the acts aforesaid, save and except the sixth subdivision, and that such act was

that of a fellow-servant, for which defendant is not responsible.

The evidence for plaintiff shows that the belt in question had broken or pulled apart the evening before; that upon the morning of the accident a ladder was placed upon the moving shaft and plaintiff was directed to ascend the ladder and hold the belt above the shaft so that the belt would not be moved by the revolving shaft; that plaintiff did this without accident at this time. Later on the same day the belt broke again and plaintiff was directed to ascend the ladder and hold the belt as above indicated. To mend the belt it was necessary to lace it across once and then hammer the lacing and lace it across again. That on the previous occasion the hammering was done by placing the belt upon a block. On this particular occasion plaintiff was holding the belt aloof from the motor shaft, and one Meyer was holding the ends to be laced together and the foreman Schmidt was doing the work of actually lacing the belt. The evidence shows that plaintiff was watching the work of lacing and when Schmidt had laced through once he called for more slack, and then placed the belt upon the upper portion of the pulley on the cutting machine shaft to hammer the lacing, when the belt in some manner went on to the pulley, started the machinery and caught plaintiff's arm and tore it off.

The plaintiff had been told just how to hold the belt when it was first laced that morning. The motor shaft was moving and the ladder upon which plaintiff stood upon each occasion was leaning against the moving motor shaft. There is no direct evidence that the alleged defect in the ladder had anything to do with the accident.

We shall not go into the testimony of the defendant upon this question of demurrer.

In argument, learned counsel for the defendant in an exceedingly ingenious and scholarly manner

undertakes to reduce plaintiff's case to the single negligent act of Schmidt, in hammering the lacing over the pulley, and then disposing of the controversy by urging that when Schmidt did the negligent act he was serving the master in the capacity of an ordinary employee, and hence was a fellow-servant with plaintiff, and therefore no recovery could be had for this negligent act of the fellow-servant. In keeping with this view of the case, counsel analyzes the petition thus: "The plaintiff in his petition alleged several grounds of negligence. The first was that the place where plaintiff was required to work was not reasonably safe in the following particulars, to-wit: The ladder upon which he was required to stand was shaky and unsteady; the belt which was being repaired was in three sections and these sections were of uneven widths; in permitting the motor shaft to revolve while the belt was being mended. The plaintiff also alleged that he was inexperienced in connection with mending belt and defendant was negligent in not giving him proper instruction, and finally, that while he was standing on the ladder holding the belt away from the shaft, defendant's foreman negligently caused it to be drawn down upon the motor shaft, and thereby set the belt in motion." Counsel then contend that the evidence was that plaintiff had been fully advised as to how to do this work and had done such work in the same manner on several other occasions, hence that ground of negligence was out of the case. In the same way, the ladder is eliminated, and so throughout, until the act of Schmidt is reached.

We can see how a different analysis of the petition might be made. It could be well said that the petition charges the several distinct acts of negligence indicated in our analysis in the beginning of this paragraph. That the act of failing to furnish a safe place should be considered as one charge of negligence, and the other acts as independent charges of negligence,

and not as mere specifications of the manner in which the place was unsafe. We are inclined to think this the proper view to take of the petition. The petition does not say that plaintiff was in an unsafe place, and then urge that it was unsafe by reason of certain conditions. It may be true, however, to show the unsafe place, it would become necessary to show some of the other alleged conditions. But we hardly think it necessary to speculate upon a proper analysis of the petition on the question now before us. Defendant's version of the petition may be taken, and yet there would be no error in refusing a demurrer to the evidence. There is an allegation of plaintiff having been directed to work in an unsafe place, and evidence that his experience was at least limited. He was directed to ascend a ladder placed against a moving shaft, around which was a loose belt which by being placed upon the pulley below would become extremely dangerous. One of the elements which entered into the danger was this constantly moving shaft. With this motor shaft not in motion the belt could have easily been hammered upon the pulley without danger, for then there could have been no movement of the belt or the machinery. The evidence disclosed that this motor shaft was kept in motion, and this act was that of the master. But for this act there could have been no accident. We might concede that Schmidt in hammering the lacing on the pulley was a mere fellow-servant, yet with that concession we would simply have an injury done by two acts of negligence, one that of the master and the other that of the fellow-servant. It required both acts to produce the injury. If, therefore, it be conceded that Schmidt was a fellow-servant and that plaintiff could not recover for his act alone, yet if the injury was the result of the combined negligence of the master and a fellow-servant a different question is presented.

In Browning v. Ry. Co., 124 Mo. l. c. 70, it is said: "It must be considered as settled in Missouri (in accord with the generally accepted law elsewhere) that where an employee sustains injury in consequence of the combined negligence of the master and of some fellow-workman, he will not, for that reason alone, be denied a recovery. [Young v. Iron Co., 103 Mo. 324.]"

To like effect is Bluedorn v. Ry. Co., 108 Mo. l. c. 448, wherein BLACK, J., said: "Nor is the plaintiff's action defeated because he and the persons in charge of the train were fellow-servants; for the train was run at a rate of speed prohibited by the ordinance, pursuant to a time card prepared and promulgated by the defendant. The unlawful and negligent act was the joint act of the defendant, and of the servants in charge of the train. The law is well settled that one servant may recover for an injury caused by the combined negligence of the master and a fellow-servant. [Young v. Iron Co., 103 Mo. 324, and cases cited.]"

So that in this case if there was negligence upon the part of the master in sending plaintiff into an unsafe and dangerous place to work, and this negligence, together with that of a fellow-servant, produced the injury, and such injury would not have resulted except for the combined negligence of the master and the fellow-servant, the master is still liable.

The question remaining is, was there proof of negligence upon the part of the master exclusive of the act of Schmidt? We think so. The evidence discloses all of the surroundings of the place to which plaintiff was directed to go by the master. He was placed upon a ladder which was leaned against a revolving motor shaft. On that was a belt which he had to hold in his hand whilst work was being done thereon at the other end, which was likewise around a shaft and close to a pulley. Had the motor shaft been stopped, no possible injury could have resulted. To

our mind it was a question for the jury as to whether or not the master was guilty of negligence in sending plaintiff into an unsafe and dangerous place to work. The details and description of the place were before the jury, and it cannot be said that there was no evidence upon the question. Expert evidence would tend but little to enlighten a jury upon a question of this kind in a case where the surroundings were so susceptible of accurate description, and were so accurately described to the jury.

There was no error in refusing the instruction in the nature of a demurrer, even on the theory of Schmidt being a fellow-servant. This contention is held against the defendant.

II. Complaint is urged against the first instruction given for the plaintiff, but to our mind the objection cannot be sustained. This instruction is predicated upon the theory that if defendant's foreman sent plaintiff into an unsafe and dangerous place to work, and directed plaintiff to assist in a dangerous and unsafe method of mending the belt in question, then a verdict might be returned for the plaintiff, if the jury found that such act of the defendant was the occasion of the injury. We are of opinion that this instruction was within the purview of the pleadings and the proof. The petition charges that plaintiff was negligently sent into an unsafe and dangerous place, and a further act of negligence is thus charged: "And also in carelessly and negligently, through its said foreman, mending the belt in the manner aforesaid." The manner had been previously described in the petition. Both the questions of dangerous place and careless method adopted for doing the work were pleaded and were not without proof. This instruction is well enough.

III. The court of its own motion gave an instruction upon the measure of damages, and this instruction reads:

"If under the other instructions you decide to find for plaintiff, you will assess his damage at such sum as you believe from the evidence will be a reasonable compensation to him for the bodily and mental pain or suffering he has sustained in consequence of said injuries, as well as for any such permanent disability to labor as you may find from the evidence he has suffered by reason thereof, loss of time, as well as for any liability for medicine and medical services he may have incurred in consequence thereof. If under the other instructions you decide to find for defendant, your verdict need merely state that you find for defendant on the issues joined."

Defendant complains of this instruction, (1) because it allows a recovery for medicine when the petition did not plead such damages and the evidence did not show such expense, (2) because it permitted an unlimited recovery for lost earnings both before trial and in the future, when the petition only alleged such damages to be nine dollars per week, and (3) because it allowed unlimited recovery for medical services, when the petition only claimed $21 on that account, (4) because it should have limited the liability for medical services to the reasonable value of such services, and (5) because the instruction assumed that plaintiff sustained pain and suffering.

The petition fails to allege any damages by reason of money paid out, or expenses incurred, for medicines, and to that extent the instruction permitted a recovery for special damages not pleaded. Such was error. [Heidbrink v. Railroad, 133 Mo. App. 40.] In the foregoing case it is said: "The third clause of the instruction on the measure of damages is as follows: 'For any expense necessarily incurred for medicines, medical attention, or nursing, which the jury may believe from the evidence the plaintiff has sustained or will hereafter sustain by reason of said injuries and di-

229 Sup—2

rectly caused thereby.' There was no evidence that plaintiff incurred any expense for nursing, and for this reason the instruction is erroneous.''

The petition avers that plaintiff had incurred an expense of $21 for medical attendance, and the instruction authorizes a recovery for medical services without limiting the recovery to the amount claimed, or to the reasonable value of such services. In this there was error. [Smoot v. Kansas City, 194 Mo. l. c. 522; Tinkle v. Railroad, 212 Mo. 1. c. 471; Heinz v. Railroad, 143 Mo. App. 38.]

In the Tinkle case, supra, this court said: ''In instruction number nine the court told the jury that the plaintiff was entitled to recover for medical services, without limiting the same to the amount claimed in the petition for such services. Upon retrial, this should be corrected.''

In Smoot's case the instruction as to medical services directed the jury to allow plaintiff ''such an amount, not to exceed $350, for said items as would be reasonable compensation for said services, if any.'' Of that instruction, we then said: ''This instruction is manifestly erroneous in this, that it authorizes a recovery for doctor's and surgeon's hire in any sum not exceeding three hundred and fifty dollars; when in the petition upon which this cause is tried, it was alleged that the damages for those items were only the sum of two hundred dollars.''

The petition charged that his loss of earnings before the trial were nine dollars per week. Not only so, but that was the measure fixed for future loss of time, for the petition reads: ''and will continue to lose said sum in the future for an indefinite period.'' The instruction permits recovery for ''loss of time'' without any limitation whatever. The petition not only fixes the amount of lost earnings suffered but limits the loss of earnings in the future. It covers both those earnings suffered and to

be suffered. It fixes the value of all such earnings at nine dollars per week. It is true that the petition avers that plaintiff's earning capacity "is greatly impaired and perhaps entirely gone," but that does not change the fact that the value of the earnings was fixed by the petition. Defendant had a right to rely upon the admission of plaintiff that his loss in this respect had been and would be only nine dollars per week, and it was the duty of the court to so limit the right of recovery in this regard. The instruction given was erroneous upon this question. [Smoot v. Kansas City, supra; Heinz v. Railroad, supra.]

Speaking of a similar instruction in the Smoot case, this court said: "It is also erroneous in not limiting the amount of recovery for loss of time from his means of livelihood to the amount claimed in the petition. It will be noted that the petition only claims the sum of two hundred and fifty dollars for loss of time from his means of livelihood." Not only did we condemn the instruction, but we went further and held that no *remittitur* would be allowed. After reviewing and discussing the cases, Fox, J., concludes thus: "Applying the rules as thus indicated by the cases heretofore cited, should this court undertake to cure the error of instruction numbered 4 by ordering that a *remittitur* be entered? Upon a careful consideration of the entire record we have reached the conclusion that it should not. The record in this case presents an action for personal injuries, and it is clear that there is no positive criterion for determining what the damages ought to be, nor can this court determine what elements of damages were considered by the jury in arriving at their verdict. They were directed by instruction 4, without any limit being fixed, to assess the damages for the loss of the time by the plaintiff from his means of livelihood, and it would simply be pure guesswork by this court, as was said in Slattery v. St. Louis, 120 Mo.

183, as to what amount was allowed by the jury for damages occasioned by the loss of such time.''

So, too, in the Heinz case, supra, Judge GOODE, after overruling all other contentions of defendant, reversed and remanded a judgment for plaintiff upon the instruction as to measure of damages. In so doing, he said: ''The only other exception which need be noticed is the instruction on the measure of damages. It should be stated by way of premise the petition alleged plaintiff lost two 'weeks' time and his earnings of $2.50 a day during that period; that his injuries were treated by a physician, and, on account of the services of the latter, plaintiff had become indebted to him for the reasonable value of the treatment, to-wit, $50. The instruction on the measure of damages told the jury to assess damages for any loss of earnings the jury might believe had been occasioned by the injuries and the reasonable expense, if any, he had incurred for medical treatment. The exception to the instruction is based on failure to limit recovery for loss of earnings and medical services corresponding to the damages charged in the petition to have been sustained in consequence of those items. We do not see how, in the face of the decisions of the Supreme Court in Smoot v. Kansas City, 194 Mo. 513, 522, and Tinkle v. Railroad, 212 Mo. 445, 471, a reversal of the judgment on account of the instruction on the measure of damages can be escaped. In the first of those cases the Supreme Court condemned as erroneous an instruction which did not limit plaintiff's amount of recovery for loss of time to the amount claimed in his petition, and in the second case it was said a similar instruction ought to be corrected on the second trial. The decisions of Tandy v. Transit Co., 178 Mo. 240, and Lindsay v. K. C., 195 Mo. 166, relied on by plaintiff, are not in point. In those cases there was testimony tending to prove that the injured party would sustain loss of time in the future—that is, after the filing of the

petition and even after trial—and for this reason it was held instructions on the measure of damages, which did not limit recovery to the loss of time alleged in the petition, were not erroneous, since that allegation covered only time lost up to the day the petition was filed. But in the present case, whatever time plaintiff lost and whatever expense he was put to for treatment by a physician had all been lost and incurred prior to the filing of the suit. He testified he had lost two weeks' time from work, as alleged in the petition, and had incurred a doctor's bill of $50. There was no chance, then, for other damages to accrue on account of those items continuing to entail damage after the case had been begun. The point falls within the scope of the decisions of the Supreme Court first cited; and the judgment must be reversed and the cause remanded for new trial.''

We, too, are cited to the Lindsay and other cases, but, like Judge GOODE, we conclude that they are not in point here. In the case at bar, the loss by injury to earning capacity was not only fixed from the date of the injury to the date of filing the petition at nine dollars per week, but it was fixed at such sum for the future. This instruction is clearly erroneous, and as the verdict in this case is for such a sum as would bespeak close consideration as to whether under all the evidence it is excessive, we think the better course is to reverse and remand.

IV. Plaintiff's instruction number 2 is criticized by the defendant. This instruction goes beyond the questions of an unsafe place, and an unsafe method of mending the belt, and goes to the act of Schmidt as a ground of recovery. The instruction reads:

''You are further instructed that if the negligence of a foreman arises out of, and is the direct result of the exercise of the authority conferred upon him by the master as a foreman, the master will be liable for such negligence. But if the negligence complained of

consists of some act committed or done by him which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, their employer will not be liable.

"And in case you find and believe from the evidence that one Albert Schmidt was employed as foreman in the factory of the defendant and had immediate control and direction of the plaintiff and others engaged in work in said factory, and had authority to direct and control plaintiff's work, and did on or about the 27th day of September, 1904, undertake and proceed to mend a belt which had been broken in said factory, and in case you find that during the mending of said belt said foreman remained in charge of the work in said factory and of the work of mending the belt, and that plaintiff during the mending of said belt was obeying said foreman and holding the belt according to his directions and orders; and in case you find that during the progress of said work the said Albert Schmidt caused the said belt to be drawn taut and down against the motor shaft mentioned in evidence and that the act of said foreman in so causing said belt to be drawn taut was due to a failure upon his part to exercise reasonable care and that thereby plaintiff was injured, then in that case you are instructed that if you find and believe that the act of the foreman in so causing the belt to be drawn taut and down against the motor shaft was done by him in the exercise of his authority as foreman under the terms of his employment, and was not done in the discharge of his duty as a colaborer with plaintiff in defendant's factory, then your verdict shall be in favor of plaintiff, unless you further believe that plaintiff was himself guilty of contributory negligence, or assumed the risk incident to the mending of the belt, as defined for you in subsequent instructions."

Defendant contends that the instruction is erroneous because it leaves the jury to determine whether the foreman Schmidt was acting in the capacity of a fellow-servant or as vice-principal. The instruction is subject to this objection if it be a valid objection under the law. The question more sharply stated is whether or not the court should have declared as a matter of law what acts were the acts of a vice-principal, and what acts as a matter of law were the acts of a fellow-servant. The court in this case did not declare what acts were those of a vice-principal, but left the jury to determine whether the foreman was acting in one capacity or the other.

It would seem that we are committed to the "dual capacity" doctrine in Missouri. In other words we recognize that a servant trusted by his master with authority may act as both vice-principal and as a fellow-servant. [Fogarty v. Transfer Co., 180 Mo. 490.]

In the Fogarty case, MARSHALL, J., reviews our own cases as well as those from other jurisdictions. We shall not review them again. The conclusion reached in the Fogarty case was that the "dual capacity doctrine" prevails in this State and in most other jurisdictions. But the recognition of the doctrine does not go to the question for our decision in the case at bar. The instruction complained of recognized the "dual capacity doctrine." The question here is, what shall the courts do in submitting the case? Shall they say to the jury that if it be found from the evidence that the foreman did certain acts, then such acts were the acts of the defendant through its vice-principal, or shall they let the jury determine whether such acts were the acts of the defendant, through its vice-principal on the one hand or the mere acts of a fellow-servant on the other hand. This question the Fogarty case does not specifically decide. There was an instruction in that case which did leave it to the jury to decide whether or not the act complained of was that

of a vice-principal or that of a mere fellow-servant, and the judgment was affirmed. The propriety of this instruction is not discussed except as to what was the rule in Illinois. In the Fogarty case the cause of action arose in Illinois and the Illinois laws and decisions were in evidence. Judge MARSHALL says: "The question then is, did Edwards act as vice-principal or as a fellow-servant of the plaintiff? If the former, the master is liable. If the latter, the master is not liable. In solving this question it must be borne in mind that under the Illinois law, the general rule is that whether the injury resulted from his acts in the one capacity or in the other, is a question for the jury to decide from all the circumstances of the case, and that the question is only one of law where the facts are conceded or there is no dispute with reference thereto, and where all reasonable men will agree from the evidence and the legitimate conclusions to be drawn therefrom, that the representative, at the time he acted, was acting as a colaborer, and not as a vice-principal. [Norton v. Nadebok, 190 Ill. l. c. 599.] Or as it is commonly expressed, did the plaintiff make out a prima-facie case for the jury? If he did, the finding of facts by the jury is not open to review in this court, except in respects and under circumstances that are not present in this record."

The case, therefore, is not authority for an instruction of the kind now in question. We are also cited by plaintiff to two other cases, Bennett v. Lime Co., 124 S. W. 608, and Burkard v. Rope Co., 217 Mo. l. c. 483, but these do not go to the point.

We think this instruction is error. Whether Schmidt was a foreman and therefore a vice-principal was a question for the jury, but whether a given act done by him was negligence of the master, or negligence of a fellow-servant, was a question of law for the court. This because the duties of a master to a servant are fixed. If the act done or the act omitted

is one pertaining to the personal duties of the master toward the servant, and the foreman or vice-principal did such act, then the court should declare to the jury that such act was that of the defendant through its vice-principal and not the act of a fellow-servant. In other words, when the act is described to the court, it is the duty of the court to declare as a matter of law whether or not an act of that character is that of the master or that of a fellow-servant. The only question, to our mind, to be left to the jury is the fact whether or not the party doing the act is in fact a mere fellow-servant or is a vice-principal. To illustrate. A is the principal, B is the alleged vice-principal, and C the servant. It is disputed as to whether or not B was the vice-principal. In such case evidence may be introduced pro and con on that question and the jury should be allowed to determine the fact. But if B had done a given act or omitted to do a given act which was negligent, the character of that can be determined as a matter of law. If the jury found that B was acting for the master in providing a place for the employee to work, then such would tend to show the fact that B was a vice-principal, but the court should declare as a matter of law that the act of furnishing a reasonably safe place was the act of the principal, provided B was authorized to act for the principal in that regard. In the case at bar it stood undisputed that Schmidt was a foreman of defendant, and the only thing left was to characterize the acts which he did. When he selected the place and the method of doing the work, his act was that of the master and such should be declared as a matter of law. To illustrate further, had Schmidt been at work upon the cutting machine along with plaintiff, doing the same or similar work for the common master, and in such work did a thing negligently that caused an injury to plaintiff, the court should declare such act to be one of a fellow-servant. The vice of the instruction lies in the fact

that it permits the jury to characterize the act, whilst this should be done by the court.

The duties of a master toward a servant are firmly fixed by the law. If the act done or omitted to be done is one violative of these duties, the court should declare it to be that of the master, and the only question is whether the person doing the act was the representative of the master. The act itself does not necessarily show that the person doing it is representing the master, because an interloper might, without authority, assume to act for the master. The character of the act, however, can always be determined. By applying the law it can be said whether or not the act is one of the character which the master should do or should not do. So that we repeat, that in our opinion the only question for the jury is whether or not the alleged vice-principal was authorized to act for the principal. The acts themselves must be named and characterized by the court. Instruction number 2 for the plaintiff is erroneous. Other instructions we shall not notice, for the reason that the views expressed will enable a retrial of the cause along proper lines.

For these reasons, the judgment is reversed and the cause remanded. *Woodson, J.,* dissents. Others in this division concur.