# JOHN T. KENNEDY v. LACLEDE GAS LIGHT COMPANY, Appellant.

### Division Two, January 4, 1909.

1. **NEGLIGENCE: Master and Servant: Suitable Wagon.** A wagon constructed for the purpose of hauling heavy stones, built with a low body about eighteen inches above the ground, its bed extending outward several inches beyond the wheels, is a suitable one on which to load from the side, by use of skids, a reel of cable wires weighing 3000 pounds.

2. ———: ———: **Reasonably Safe Appliances: Adopted by Laborers.** Usually the men engaged in the loading of the 3,000-pound cable reel upon a wagon adopted their own system and determined for themselves how the skids were to be placed and propped. But, even though that were the usual way, yet if the man in charge of the work, with the men assisting him, tried to load the reel, and failing, sent word to the foreman that they needed other skids, and he started to the scene and on the way met other men going for blocking and told them not to get it, but to come on and assist him, and when he reached the place he assumed charge of the work, selected the cross-arms out of which he constructed a skid and other cross-arms which were used as props, and these skids and props broke down and caused the injury, the case is not one in which the master has performed his duty in furnishing to his servants means and appliances, leaving the use of the appliances and manner of performing the work to their judgment. But it is a case in which the foreman, and consequently the master, took charge of the particular work and chose the appliances and the manner of doing the work, and hence if there was negligence in failing to exercise reasonable care in providing proper appliances, or in the manner in which they were used, it was the master's negligence. In such case whatever might have been the general custom was beside the point at issue.

3. ———: ———: ———: **Improvised Skid.** An improvised skid made out of the cross-arms used on telephone poles, when there is no evidence that other companies engaged in like busi-

ness had ever adopted such an improvised skid, and no evidence that plaintiff, while he had on former occasions used skids so made in loading cable reels, had ever used such a skid in loading a reel so large as the one which broke down the skid and injured him, is not to be considered such an appliance as is ordinarily used for like purposes by persons engaged in the same kind of business.

4. ————: ————: ————: **Propping Wagon.**  Whether or not the general foreman used proper care or was negligent in not propping up the wide wagon bed, upon which he directed the men, by use of an improvised skid, to load, from the side, a 3,000-pound cable-wire reel, as was suggested by the assistant foreman should be done, was a question for the jury. The fact that such a wagon was not shown ever before to have tipped and let down the skids, is not sufficient to justify the court, under the circumstances, to refuse to submit to the jury the question of whether the general foreman exercised proper care and caution in attempting to load the heavy reel without propping up the wagon bed, when the bed did in fact tip over and let down the skids and thereby the plaintiff was injured, even though the skids themselves were blocked up but nevertheless broke down under the heavy weight.

5. ————: ————: ————: **Erroneous Evidence: Not Submitted By Instruction.**  Even though testimony that the wagon usually used by defendant in loading the reel had on the previous day broken down and in consequence defendant secured the wagon in question, was improperly admitted in evidence, no harm resulted to defendant therefrom, if the court refused to submit to the jury the question of whether the wagon used was insufficient.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

Affirmed.

*Seddon & Holland* for appellant.

(1)  The court erred in refusing to give, at the close of all the evidence, the peremptory instruction offered by defendant.  Brands v. Car Co., 112 S. W. 511; Forbes v. Dunnavant, 198 Mo. 193; Bradley v. Tea & Coffee Co., 111 S. W. 919.  (2)  The court erred in giving instruction 1 offered by plaintiff.  (3)

The court erred in giving instruction 16 at the instance of plaintiff. (4) The court erred in refusing to give instruction D at the instance of defendant. Forbes v. Dunnavant, 198 Mo. 193. (5) The court erred in refusing to give instruction E offered by defendant. (6) The court erred in refusing to give instruction F offered by defendant. Forbes v. Dunnavant, 198 Mo. 193. (7) The court erred in allowing plaintiff to testify, over the objection of defendant, that the wagon in question was not the regular wagon used by defendant.

*A. R. Taylor* for respondent.

The contention of appellant that because appellant had in its store-house sufficient skids and appliances for the loading of the reel safely on the wagon is futile, whereas in this case the foreman and vice-principal of appellant was present directing the manner and means to be used in the work, and directed the work to be done with the means and appliances used, and in the manner it was being done. Under such circumstances the foreman Gallagher was the vice-principal of defendant in the matter of providing the appliances for this work, in directing the work to be done and in the entire matter of the work. He was present when he was informed that he had better have the bed or apron of the wagon blocked to keep it from tipping; he neglected and refused to do so. When Shevlin sent the men to get the proper skids and supports to do the work, he countermanded the order and said the work should be done with the appliances on hand, and the evidence shows, without substantial dispute, that the disaster came upon respondent directly because the foreman refused to heed admonitions of the danger of doing the work with insufficient appliances. The principle on which this case was tried finds ample support in the settled law. It is a duty inherent in the relation of master and servant that the master is bound

to use ordinary care in supplying appliances reasonably safe and suitable for the servant to work with in the discharge of the duties of his service, and also to use such care, in commanding and controlling the work, and to whomsoever, without regard to rank, the master delegates such duty, such person in the discharge or omission to discharge such duties personifies the master—and the master is responsible for his neglect injuring the servant. This is the fundamental relation of master and servant, supported by all respectable authorities, and is consistently the ruling of this court. Bane v. Irwin, 172 Mo. 317; Moore v. Railroad, 71 Mo. 78; Moore v. Railroad, 85 Mo. 394; Sullivan v. Railroad, 107 Mo. 78; O'Mellia v. Railroad, 115 Mo. 218; Foster v. Railroad, 115 Mo. 180; Coontz v. Railroad, 121 Mo. 659; Donohoe v. Kansas City, 136 Mo. 670; Herbert v. Railroad, 116 U. S. 648; Coombs v. Const. Co., 205 Mo. 379. This is no case where the master has performed his duty in furnishing to the servants proper means and appliances, and leaving the use of the appliances, manner of the work, etc., to the judgment of the servants. Here the evidence shows the precise contrary. When the servants wanted the proper appliances, and so mentioned to this vice-principal, he commanded the work to proceed without them. The cases cited by appellant are not relevant to the issues in this case.

GANTT, P. J.—This action was brought by the plaintiff against the defendant to recover damages on account of personal injuries sustained by him on the 4th of February, 1903, at or near the northeast corner of Broadway and Spruce streets in the city of St. Louis, while plaintiff was in the service of the defendant as a laborer engaged in the work of rolling a heavy cable reel upon a wagon for the defendant. The injury necessitated the amputation of the right leg of the plaintiff above the knee.

The petition in substance states that the defendant is, and at the time mentioned was, a corporation under the laws of this State and used and operated the wagon, reel and appliances herein afterwards mentioned. That prior to and on the 4th of February, 1903, the plaintiff was in the employment of the defendant, and on said day at and about the work of putting a reel of cable wire on a wagon near the northeast corner of Broadway and Spruce streets as a laborer. That as the plaintiff, in the discharge of his duties as such laborer, was assisting in rolling said reel of cable wire upon a wagon furnished by the defendant to receive it, the supports upon which said reel rested gave way and became displaced, whereby said supports under said reel and said reel fell upon his right foot and leg and so injured them as to necessitate the amputation of his right leg above the knee, and otherwise injured him upon his body, and the plaintiff avers that said supports under said reel were caused to give way and so injure the plaintiff because said supports were insufficient for said purpose, and because the wagon furnished to receive said reel by defendant was of improper structure and was unblocked and insecure to prevent its giving way and toppling under the weight of said reel, which was over three thousand pounds in weight. That the floor of the wagon extended beyond the wheels so that when the weight of said reel was applied on the edge of the floor of the wagon the said wagon was caused to give way and the supports under said reel were caused to fall and injure the plaintiff as aforesaid. That the defendant and its agent in charge and control of said work was negligent in using said wagon for said work, and was negligent in failing to put blocks or supports under said wagon or otherwise securing the same to prevent its giving way under said strain. And was further negligent in failing to properly secure the support under the skids used to support the weight of said reel while it was being plac-

ed upon said wagon, and was further negligent in or-
dering plaintiff to do said work when said appliances
were in such insecure and dangerous condition. The
plaintiff further states that defendant's agent and
foreman in charge of said work well knew of the de-
fective and insufficient condition of said wagon and
appliances, yet negligently ordered and directed said
work to be done without using any care to remedy such
conditions, which several acts of defendant and its said
agent each contributed to cause the plaintiff's injuries
as aforesaid. That by his injuries so sustained the
plaintiff has suffered and will suffer great pain of
body and mind; has been crippled for life and perma-
nently disabled from labor and has lost and will lose
the earnings of his labor, has incurred and will incur
large expenses for medicines, medical and surgical at-
tention and nursing, to his damage in the sum of twen-
ty-five thousand dollars, for which sum he prays judg-
ment.

The answer was a general denial and a general
plea of contributory negligence. The reply was a gen-
eral denial.

The testimony tended to show that the defendant
at the time of the alleged injury to plaintiff was en-
gaged in furnishing gas and electricity to the people
of St. Louis. One of the means of doing this was by
using cable wires, and in carrying on its business it
became and was necessary for it from time to time to
haul reels on which cable wires were rolled from place
to place. These reels were hauled upon wagons pro-
vided by defendant for that purpose. On the day be-
fore the injury a wagon usually used by the defendant
for said purpose had broken down and the defendant
had procured another wagon, which was constructed
and adapted to hauling heavy stone. It appears that
the bed or floor of this wagon extended out several
inches beyond or outside of the wheels, some four to
six inches beyond the tires. It was upon this wagon

that the defendant's servants, including the plaintiff in this case, were engaged in loading the reel of cable wire, weighing about three thousand pounds, at the time that the plaintiff was injured. The evidence tended to show that this wagon was of the kind generally in use for hauling stone, safes and other heavy articles. The body of this wagon was about eighteen inches from the surface of the ground. On the morning of the injury to plaintiff he was at work at Broadway and Market streets. Miles Shevlin was in charge of several men at Broadway and Spruce, who were trying to put the reel in question upon the wagon. They were unable to procure proper skids or appliances for loading the reel and sent word to the general foreman, Andy Gallagher, that they would require proper skids to put the reel on the wagon. Thereupon Gallagher, who was the foreman over the plaintiff and other employees of the defendant, took six or eight men, including the plaintiff, with him to the place where the reel must be loaded. Prior to Gallagher and his men reaching the place Shevlin had used a barrel skid about eighteen inches wide and twelve feet long, but it proved insufficient, and he on that account sent for Gallagher. After Gallagher reached the place where the reel was, he took charge of the work of loading the reel on to the wagon. It appears that before Gallagher reached the place, Shevlin had sent some of the men to get some blocking and that they met Gallagher on their way down and told him they were going for the blocking. He said: "Never mind, there is enough blocking down there. Come on back with us." Shevlin testified that there was no blocking under the wagon to keep it from tipping; that he told Mr. Gallagher that he had tried to load the reel on that day, and that he ought to block the apron of the wagon; but Gallagher made no reply to this suggestion. He testified that the blocking would support the apron of the wagon so as to keep it from tipping down when the

weight of the reel went on it. This apron was about eighteen inches above the surface of the street. After Gallagher reached the place, a wagon loaded with cross-arms, which are usually used upon telegraph and electric light poles, arrived on the scene, and thereupon two of these cross-arms were placed as skids extending from the sidewalk to the wagon and under these skids a few feet from the wagon were placed some cross-arms, one being laid upon another to serve as props. With this preparation the reel was rolled upon the skids towards and upon the wagon. When the reel got to the wagon the skids collapsed, the edge of the wagon tilted and the reel fell upon the foot and leg of the plaintiff, who was helping roll the reel up to the wagon. The plaintiff's leg was broken and it was necessary to amputate the same above the knee. There was no evidence of any negligence on the part of the plaintiff, in doing his work in pushing the reel. There was evidence on the part of the defendant that the wagon was adapted to the work of hauling reels and there was also evidence that the manner of placing the props and skids was left to the men. Mr. Gallagher, the foreman, testified that he supplied this wagon on this occasion to haul the reel and that it was customary to use cross-arms for skids, that the defendant company had a supply in store. The evidence as to the injury and damage to plaintiff tended to show that the plaintff was a strong, able-bodied man, forty-nine years old and earning sixty dollars per month; that since his injuries he has only earned forty dollars for eight days service as judge of election. His doctor's bills at the hospital were paid by the defendant. Since leaving the hospital he has incurred the expense of a doctor for five visits at two dollars a visit, and that he has been nursed by his wife since leaving the hospital as his limb had to be dressed every day by her.

The jury returned a verdict of five thousand dollars, and judgment for that sum was rendered.

I. As to the contention of the plaintiff that the wagon was not a suitable one, the circuit court found against the plaintiff on this proposition and we have been unable to find anything in the evidence to show that it was not. It was constructed for the purpose of hauling heavy articles such as heavy stone, and was built with a low body about eighteen inches above the surface of the earth. We think there was no evidence to submit to the jury that the defendant was negligent in using this character of wagon.

II. The conflict is whether there was sufficient evidence to support the plaintiff's contention that the defendant negligently failed to furnish plaintiff with reasonably safe appliances and a reasonably safe place in which to do his work in assisting to roll the reel upon the wagon. The defendant insists that there was no evidence whatever of negligence on its part and that the mere fact that the wagon tipped when the reel first rested upon its edge, and that the skids broke down and gave way, thereby precipitating the reel upon the plaintiff and breaking his leg, did not make a prima-facie case against the defendant. Whereas the plaintiff insists that, as it was the defendant's duty as a master to use ordinary care in supplying appliances reasonably safe and suitable for the plaintiff to work with in the discharge of the duties of his service and also to use such care in commanding and controlling the work, the failure of the foreman, Gallagher, who was the vice-principal of the defendant in the matter of providing the appliances for this work, to have the wagon blocked so as to keep it from tipping, and in neglecting to place proper skids and supports under the skids to sustain the weight of the reel, was negligence. The question now is whether the circuit court should have sustained the demurrer to the evidence. In reaching the conclusion upon this proposition, it is clear, we think, that the foreman, Gallagher,

represented the defendant in the matter of providing
the appliances for this work and in directing how it
was to be done. While there was some evidence on the
part of the defendant's other employees, who were
present at the time, to the effect that in rolling the
reels on to the wagons and taking them off, the men
generally adopted their own system and it was left
to them to determine how the skids were to be placed
and what props were to be used, the testimony of the
plaintiff, Shevlin and Quinette and others, clearly
establishes that Gallagher was present and directing
the loading of the reel, and that when Shevlin sent
the men to get blocks he countermanded the order and
said there were plenty of appliances on hand and he
directed the laying of the skids and other supports.
This clearly is not a case, so far as the plaintiff's wit-
nesses are to be credited, in which the master has
performed his duty in furnishing to his servants means
and appliances and leaving the use of the appliances
and the manner of the work to the judgment of the ser-
vant, and consequently the facts of the case do not
bring it within the principle of Forbes v. Dunnavant,
198 Mo. 193; but is a case in which the foreman was
on the ground and took charge after a subordinate of
his had failed to load the reel upon the wagon, and had
called upon him for better or more appropriate ap-
pliances, and in which the foreman directed the plain-
tiff and his associates as to what appliances should be
used, and how the work should be done. And if there
was negligence in failing to exercise reasonable care
in providing proper appliances and in the manner in
which they should be used, we think there is no escape
from the conclusion that it was negligence of the de-
fendant through its vice-principal, Mr. Gallagher. It
was not a case where the master had supplied a suffi-
ciency of materials and appliances and then left the
work to the judgment of his servants and his fellow-
servants. [Coombs v. Construction Co., 205 Mo. l. c.

379.]* But it is also insisted by the defendant that the facts of this case bring it within the rule announced in Brands v. Car Co., 213 Mo. 698, in which it was held that no inference of negligence of a master arises from evidence that the appliances furnished were such as are ordinarily used for like purposes by persons engaged in the same kind of business, and negligence cannot be imputed from the employment of machinery in general use. In that case the master furnished a straight emery wheel of the character in general use in all manufacturing establishments in the vicinity where he had business, and there was no evidence to show that that character of wheel was inherently dangerous to employees using them. In this case there was no evidence that this device of improvising skids out of the cross-arms and building up supports with them had ever been adopted by any other companies or freighters in St. Louis or elsewhere. The most that can be said of this evidence is that the defendant had used these cross-arms in this way in loading their reels and that plaintiff had assisted in loading reels on other occasions with such appliances. But he had never seen this appliance used or character of propping done, for the loading of a reel as heavy as this one was. When plaintiff reached the ground where the reel was to be loaded, the skid had already been laid from the sidewalk to the bed of the wagon and the props put under it. It seems to us that the doctrine in the Brands case as to negligence in using a well known and long used character of machinery, has little or no application to the facts of this case.

But it is the contention of the defendant that the wagon might have been loaded a thousand times without tilting. The mere fact that it did tilt did not create any presumption that such tilting should have been provided against by blocking the wagon itself, and that in order for the plaintiff to recover, it devolved upon him to show first that if it had been blocked, the ac-

cident would not have happened, and secondly, that such propping was necessary and that the usual method adopted in the loading of such a wagon was to prop the wagon itself. The evidence clearly tended to show that the tilting of the wagon bed did cause the fall of the reel and the instability of the props under the skid caused the skid to break and precipitate the reel upon the plaintiff. The evidence tended to prove that Shevlin, who first had charge of the work of loading the reel, was of the opinion that it could not be safely done without propping the wagon and this on account of the great width of the bed extending out from the tires of the wheels, and that Gallagher, the foreman's attention was directedly called to the necessity of such propping. And the sequel showed that Shevlin's judgment was correct. Thus we think it became a question of fact for the jury to determine, in view of all this evidence, whether Gallagher exercised ordinary care in requiring the reel to be loaded upon this wagon without having first made it firm by props, and this would not be a conviction of the defendant of negligence merely from the fact that the wagon did tip, but whether it was negligence in view of all the facts apparent to Gallagher, as well as Shevlin, that the loading of a reel, weighing three thousand pounds, upon as broad a surface as the wagon bed presented, would not suggest and require of a reasonable man the propping of the wagon so as to prevent its tipping when this heavy reel should come upon the outer edge of the wooden bed. As to the contention that there was no proof that the propping of such a bed was the usual method adopted in loading it, there was no evidence as to what the usual method was, while on the other hand there was no evidence that such a method as adopted by Gallagher had so long been used by the defendant and others using like conveyances without accidents or tipping of the wagon, as to show that in adopting such a method de-

fendant was but following such course and manner adopted generally by others engaged in like work in handling freight or articles of as great weight as the reel in this case was. It might well have been that a reel of much less weight could have easily and safely been loaded upon the wagon without tipping it, but it was a question of fact for the jury, considering the great weight of the reel, as to whether a reasonably prudent man, in view of the natural laws of gravity, would not have concluded that to attempt to load this heavy reel upon the outer edge of this wide wagon bed would not naturally tip the wagon. And if it would do so, that ordinary care would have dictated to him the necessity of propping in order to safely load the reel and protect the men, who were rolling it up the skid, from having it fall back upon them. In our opinion this question was properly submitted to the jury upon all the facts in evidence. If the jury found, as they did, that the superintendent, Mr. Gallagher, was negligent in devising supports for the wagon and skids and in requiring the plaintiff to work in pushing the reel upon the wagon, then plaintiff cannot be charged with having assumed this negligence of the master. Nor on the other hand with having worked in a place so obviously dangerous that no prudent man would have attempted to have rolled the reel up the skid and on to the bed of the wagon. These principles, we take it, are too well settled in this State to require a citation of authority.

In our opinion then the court did not err in overruling the demurrer to the evidence and submitting the case to the jury under proper instructions.

III. What we have said in the foregoing paragraph applies as well to the objection to the plaintiff's first instruction, which is hypothecated upon the facts, which were submitted to the jury, to say by their verdict whether the defendant was guilty of neg-

ligence in failing to prop this wagon and support the skids with proper blocking.

IV.  Among other instructions the court gave the following as to the measure of damages, and known in the record as number 16: "If the jury find for the plaintiff they should assess his damages at such a sum as they believe from the evidence will be a fair pecuniary compensation to him, first, for any pain of body or mind which the jury believe from the evidence he has suffered by reason of said injuries and directly caused thereby; second, for any loss of the earnings of his labor which the jury believe from the evidence the plaintiff has sustained or will sustain by reason of said injuries and directly caused thereby; third, for any expenses necessarily incurred for medical treatment or nursing, which the jury believe from the evidence the plaintiff incurred by reason of such injuries and directly caused thereby." Counsel for the defendant challenge this instruction on the ground that it allowed plaintiff to recover for medical services, when they insist that there was no evidence that he paid anything for the same, or was liable to pay for the same. This contention grows out of the difference of view as to what the evidence shows in regard to the doctor's bill for five visits after the plaintiff had left the hospital. When the plaintiff was on the stand he testified that his leg was amputated by Dr. Amyx with the assistance of Dr. Coryell and Dr. McCandless. In answer to a question by counsel for the defendant, "You did not have to pay Dr. McCandless, Dr. Amyx and Dr. Coryell for that amputation? Ans. No, sir. Q. Nothing for the hospital services or professional nursing? Ans. No, sir. Q. In your deposition taken shortly after this accident, you stated that your doctor bills were paid by the company? Ans. I did not pay them." He was asked also by his own attorney, "Now who has treated you, if anybody, since you have left the hos-

pital? Ans. Dr. Amyx. Q. How long did he treat you after you left the hospital? Ans. He was called in on one occasion when erysipelas set in in my stump. Q. How often did he treat you for that? Ans. Five times, five visits. Q. What was his bill? Ans. Two dollars per visit. Q. For the amputation of your leg do you know who paid? Ans. I do not know, sir.'' It is the contention of the defendant that as the defendant company paid the bill of Dr. Amyx to the amount of $150, it thus appears that this bill of Dr. Amyx of $150 paid by the defendant was all the doctor bills that were paid and that this bill of ten dollars was included in that bill. After carefully reading the testimony of the plaintiff and Dr. Coryell, it is evident that the defendant did pay the doctor bills for the amputation and their services at the hospital, but that plaintiff in his testimony did not include and did not consider that defendant had paid Dr. Amyx for the five visits and services rendered after plaintiff had left the hospital. We think there is no merit in this assignment of error. We cannot bring ourselves to believe under any circumstances that it entered to any great extent into the making up of the verdict for plaintiff.

V.    It was also urged as error that the circuit court refused to give three instructions designated as D, E and F, which embodied the principle of non-liability of the defendant for the negligence of the fellow-servants of the plaintiff in failing to prop the wagon and in failing to hold on to the reel while pushing it up on the skid.

In so far as this instruction submitted to the jury the negligence of plaintiff's fellow-servants in letting go their hold on the reel when the tilting of the wagon threw it back on the skid, we think there is absolutely no evidence to support it. Like plaintiff, they were obeying the orders of the foreman in pushing the reel up the skid on to the wagon bed or apron, and when

it was tilted back on them they merely jumped out of its way, in obedience to the impulse of self-preservation, and in so doing could not be chargeable with the negligence of the foreman which had brought them into this dangerous situation.

As to the other ground of negligence, to-wit, their failure to prop the wagon to prevent its tilting the reel, it wholly ignores the responsibility for the negligence of the foreman in failing to have the wagon propped, and when he was on the ground directing what propping or failure to prop should be done, as the evidence absolutely showed.

If it be contended that the statements of the absent witnesses, Daly and Butler, support defendant's position, it is to be observed that Daly merely says, "In rolling reels onto wagons and taking them off, we men *generally* adopted our own system. It was left to us to determine first how the skids were to be placed, and what props were to be used. It was not our foreman's duty to personally [attend] to these duties." Whatever might have been the general custom was beside the point at issue in this case. Here the uncontradicted testimony was that the foreman Mr. Gallagher did take charge of this particular work, as he had the right to do, and that he did not leave it to the men to determine just how the skids were to be placed and what props were to be used. He determined that there was no necessity for propping after having been advised and warned by the subordinate foreman, Shevlin, that it was necessary. The fact that the men did not suggest the necessity of propping or what they thought about it, was immaterial. Nor was the plaintiff bound by what they thought or did not think. He was not present until the skid was adjusted to the wagon. He found the foreman in charge and directing the loading of the reel, and what was said by Judge SHERWOOD in Sullivan v. Railroad, 107 Mo. l. c. 78, is peculiarly applicable here, to-wit, "The fact

that Prather [Gallagher] was present and ordered and superintended the removal of the last section of the roof when the accident occurred was tantamount to a tacit assertion that it was safe for plaintiff to proceed, . . . and plaintiff was not bound to search for danger, but had a right to rely upon the judgment and discretion of the defendant's foreman that he would fully perform the measure of his duty towards him.'' In Bowen v. Railroad, 95 Mo. 277, this court approved the following excerpt from Arkerson v. Dennison, 117 Mass. l. c. 412: ''When the preparation of the appliances is neither entrusted to nor assumed by them, the master may be held guilty of negligence, if defective appliances are furnished, even though the workmen themselves are employed in the preparation of them.'' No more striking example of this doctrine could well be afforded than the facts of this case furnished. Here one foreman had found the appliances at hand insufficient and had applied for more, and thereupon his superior had come upon the ground and assumed charge of the work and directed it to be done, without propping the wagon or requiring the skid to be properly supported. To have invited the jury to have found that plaintiff's injuries, under this state of facts, were due to the negligence of his fellow-laborers, who had no voice in providing the appliances, would have led them away from the true law of the case and defendant's liability.

VI. As to the final contention, that it was error to have permitted plaintiff to show that the wagon ordinarily used by defendant for hauling reels had broken down on the day prior to plaintiff's injuries, and for that reason this wagon had been procured, it need only be said that, inasmuch as the court refused to submit to the jury that the wagon that was used was insufficient, no possible harm could have resulted to defendant by that evidence.

In our opinion, the cause was well tried and there is no reversible error in the record, and the judgment is therefore affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.