# CHARLES GALE, Respondent, v. HELMBACHER FORGE & ROLLING MILL COMPANY.

**St. Louis Court of Appeals, September 30, 1911.**

1. **MASTER AND SERVANT: Injuries to Servant: Fellow Servants: Evidence.** In an action by a servant for injuries received while repairing the master's machinery, evidence that a vice principal ordered plaintiff to work under another servant, and that the latter exercised superintendence and control over the servants working with him on all repair jobs was sufficient to justify an inference that such servant was vested by the master with the power of superintending control over plaintiff, which would be sufficient to constitute him a vice principal, and hence the question whether such servant was a fellow servant of plaintiff or a vice principal of the master was for the jury.

2. ———: **Fellow Servants: Dual Capacity Rule.** The "dual capacity" rule prevails in this state.

3. ———: ———: ———: **Liability of Master.** Where a servant was entrusted by the master with the superintending control over the servants working with him in doing certain work, such servant, under the "dual capacity" rule, represented the master and the master was liable for his negligence only in the discharge of such duties as the master himself should have discharged or which rested upon the master as absolute duties.

4. ———: **Duty of Master: Safe Place to Work.** It is the duty of the master to exercise reasonable care to furnish appliances for his servants in the performance of their duties that are reasonably safe, suitable and fit for the designed use; and this duty is an absolute and personal one.

5. ———: **Fellow Servants: Dual Capacity Rule: Selection of Appliances by Foreman: Liability of Master.** Where a master gave a servant superintending control over the men working with him in doing certain work, such servant, in selecting from the storeroom an unsuitable apparatus for the work over which he had superintending control, was acting as a vice principal and not as a fellow servant, since the selection of a suitable apparatus was an absolute and personal duty on the part of the master.

6. ———: ———: **Selection of Appliances by Foreman.** Although the master might be said to have performed his duty by

providing safe appliances and entrusting the selection of the particular one to be used to the judgment of his servants, yet if he does not entrust such selection to a mere servant, but undertakes to make it himself, or entrusts it to a servant having superintending control over the other servants, he is liable for failing to exercise due care in making it.

7. ———: ———: ———. Where a foreman selects an appliance from many other appliances furnished by the master and expressly or impliedly directs the workmen to use it, the selection is blended with command, direction and assurance, and the workmen have a right to presume the appliance is a proper one, unless the danger of its use is so obvious that a reasonable man would not risk it; but where such a selection is made by a mere servant, the co-servants would have some discretion to reject it and to get the proper appliance.

8. ———: ———: ———. Where a vice principal produces only one appliance and directs it to be used, that is the only appliance that is "provided" in attempted compliance with the duty of the master; and although there may be other appliances, yet, if they are not produced, especially where their whereabouts are unknown, they are not provided.

9. ———: Injuries to Servant: Sufficiency of Evidence. In an action by a servant for injuries received by reason of a defective apparatus, which was selected by another servant who exercised superintending control over plaintiff, *held* that the question of the master's liability was for the jury.

10. ———: ———: Contributory Negligence. In an action by a servant for injuries received by reason of a defective apparatus, *held* that the evidence tended to prove plaintiff worked with the apparatus knowing it to be unsafe, and hence that the question of whether or not he was guilty of contributory negligence was in the case.

11. NEGLIGENCE: Instructions: Submitting Negligence as Contributing Cause. Where, in a negligence case, there is evidence of defendant's negligence and plaintiff's contributory negligence, but no evidence that any other cause contributed to the injury, an instruction that plaintiff is entitled to recover, if the jury believed the negligence therein hypothesized "directly contributed to cause" the injury, is erroneous; and although, in such a case, there be evidence of other causes concurring with defendant's negligence to product the injury, yet, in order to excuse the words, "contributed to cause," they should always be so safeguarded as to exclude the idea that the concurring negligence of plaintiff and defendant will permit a recovery, and should indicate what fact contributed with defendant's negligence to cause the injury.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED AND REMANDED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant.

(1) The court erred in overruling the demurrer to the evidence, because the plaintiff and Joe Erschen, the millwright, were fellow-servants. (a) They were fellow-servants because engaged in a common employment under the same master working to accomplish the same common end, each having the same opportunity to observe the other and to report each other's delinquencies to a common superior and neither having power to discharge the other. Donnelly v. Cudahy Mfg. Co., 75 Pac. 1017; Railroad v. Kneirin, 152 Ill. 456; Richardson v. Mesker, 171 Mo. 666; Hawk v. McLeod Lumber Co., 166 Mo. 121; Sams v. Railroad, 174 Mo. 53; Murray v. Railroad, 98 Mo. 573; McCarty v. Rood Hotel Co., 144 Mo. 397; Jackson v. Lincoln Mining Co., 106 Mo. App. 441; Electric Co. v. Wells, 110 Ga. 192; Stringham v. Stewart, 111 N. Y. 188; Delory v. Blodgett, 185 Mass. 126; Dantzler v. Coal Co., 22 L. R. A. (o. s.), 361; Ewan v. Lippincott, 47 N. J. Law, 192, 54 Am. Rep. 148; Henshaw v. Pond's Extract Co., 21 N. Y. Supp. 177, 149 N. Y. 572; Quigley v. Levering, 167 N. Y. 58, 54 L. R. A. 62; Helling v. Schindler, 145 Cal. 303; Cregan v. Marston, 126 N. Y. 568; Manning v. Gen. Riv. & Lake O. S. Co., 66 N. Y. App. Div. 314; Bjbjian v. Rubber Co., 164 Mass. 214; Porter v. Coal Co., 84 Wis. 418; Bergstrom v. Staples, 82 Mich. 654; Andre v. Elevator Co., 117 Mich. 560; Hathaway v. Railroad, 92 Iowa 337; Nat. Tube Works v. Bedell, 96 Pa. St. 175; Stevens v. Chamberlain, 1 L. R. A. 513. (b) Because of the fact that the dual capacity doctrine prevails in Missouri, the

mill-wright acted as a mere fellow-servant of the plaintiff in the doing of the work, notwithstanding his right to direct the same.  Fogarty v. Transfer Co., 180 Mo. 490, and cases cited; Lee v. Bridge & Iron Works, 62 Mo. 565; Card v. Eddy, 129 Mo. 510; Hawk v. McLeod Lumber Co., 166 Mo. 121; Rigsby v. Oil Well Supply Co., 115 Mo. App. 297; Stevens v. Lumber Co., 110 Mo. App. 398; McIntyre v. Tebbets, 120 S. W. 621; English v. Shoe Co., 122 Mo. 747; Rodgers v. Schiele, 127 S. W. 618.  (c)  The fact that Joe Erschen selected a two-ply chain instead of going to the trouble of getting the four-ply chain does not make the defendant in this case liable; for the selection of such an appliance as is unsuitable when there was a suitable appliance at hand is the act of a fellow-servant. Forbes v. Dunnavant, 198 Mo. 193; Herbert v. Ferry Co., 107 Mo. App. 299; Steffenson v. Roehr, 116 S. W. 451; Reeder v. Mine Co., 129 Mo. App. 107; Moran v. Brown, 27 Mo. App. 487; Gauges v. Railroad, 185 Mass. 76; Railroad v. Scheuring, 4 Ill. App. Rep. 583; Kehoe v. Allen, 92 Mich. 464; Hefferen v. Railroad, 45 Minn. 471; Ling v. Railroad, 50 Minn. 160; Prescott v. Ball Engine Co., 176 Pa. 459; Smith v. Railroad, 114 N. Y. Supp. 228; Railroad v. Stone, 77 Kan. 642; Huber v. Iron Works, 109 N. Y. Supp. 177.  (2) The court erred in giving an instruction for plaintiff which permitted a recovery by plaintiff in the event that defendant merely contributed to cause plaintiff's injury.  Hof v. Transit Co., 213 Mo. 435; Krehmeyer v. Transit Co., 220 Mo. 639; Schmitt v. Transit Co., 120 S. W. 96; Wilson v. United Rys., 121 S. W. 1083.

*A. R. Taylor* and *Howard Taylor* for respodent.

(1)  A servant entrusted by the master with the power to control and direct the employees working under him and to provide the appliances for the work is the vice principal of the master in such direction

and control. Combs v. Rountree, 205 Mo. 1. c. 385. A master cannot delegate duty of using ordinary care to provide a place reasonably safe to do the work and escape liability for non-performance of such duty. Combs v. Rountree, supra; Hallweg v. Telephone Co., 195 Mo. 1. c. 166; Edge v. Railroad, 206 Mo. 1. c. 496; Bane v. Irwin, 172 Mo. 1. c. 317; Moore v. Railroad, 85 Mo. 588; Hoke v. Railroad, 88 Mo. 360; Lasalle v. Kosta, 190 Ill. 130. (2) There was no evidence in the record to sustain a plea of contributory negligence, and appellant's contention does not embrace such a claim. Under this state of the record the Hof case, 213 Mo. 1. c. 468-469, and Krehmeyer v. Railroad, 220 Mo. 1. c. 654, do not apply, because, in this case, on this record, there was no evidence of negligence on the part of respondent, therefore nothing to mislead the jury into the belief that the plaintiff, under the instruction complained of, could recover although his negligence concurred with that of the appellant in producing the injury. Now, this was the single ground on which Graves, Judge, placed his deciding vote in the Krehmeyer case. [Krehmeyer v. Transit Company, 220 Mo. 1. c. 673, 674.]

STATEMENT.—This is an action to recover damages for personal injuries sustained while the plaintiff was in the service of the defendant.

The plaintiff had judgment for $7500 and the defendant has appealed, assigning as error the action of the trial court in refusing to sustain a demurrer to the evidence, and in giving certain instructions at the instance of the plaintiff.

The salient allegations of the petition are: That defendant was, at the time alleged, a corporation, using and operating a certain building and machinery and appliances for making bar iron, and plaintiff was in its service as a machinist laborer. That on August 15, 1906, defendant was engaged in the work of

raising a heavy, iron, circular piece of machinery known as a "spider," to adjust it into an appliance known as a "squeezer," using a chain block for that purpose. That in order to raise said spider with ordinary safety to defendant's employées engaged in said work, it was necessary that the chains used in hoisting and securely holding said spider, should be attached to said spider at four places on its circumference, so as to prevent it from getting out of balance and so injuring defendant's employees and the plaintiff. That in raising said spider at said time, Joseph Erschen, defendant's agent and foreman having charge and control of said work of raising said spider for defendant, and also having authority from defendant to provide the manner of doing said work and the means and appliances for doing said work and of directing and controlling defendant's employees in doing said work, including the plaintiff, used a chain attached at but two places on said spider. That said chain was iron or steel, and was very liable to slip and cause said spider to slip whilst being so raised and to become unbalanced and injure defendant's employees including the plaintiff whilst so engaged in said work, as defendant and said agent and foreman well knew, or, in the exercise of ordinary care, would have known in time by the exercise of ordinary care to have averted injury to the plaintiff as herein stated. Yet defendant and its said agent and foreman negligently provided said means and caused said spider to be raised as aforesaid. That whilst the plaintiff, in the due discharge of his duty, was engaged in aiding in the raising of said spider holding the rim thereof, owing to said defective and dangerous way in which said chain was attached to said spider in two places, instead of four, and owing to the failure of the defendant to otherwise secure said spider from becoming unbalanced whilst being so raised, said spider, owing to the chain slipping, became unbalanced and

slipped and caught the plaintiff's left arm between said spider and an iron post and so crushed the bones, muscles and tendons thereof as to necessitate the amputation of his left arm between the elbow and wrist. And plaintiff avers that his said injuries were caused by the negligence of defendant and its said foreman in providing such defective means and manner of doing said work. Allegations of suffering and damage follow, and the petition closes with a prayer for damages in the sum of $15,000.

The defendant's answer consisted of a general denial, a general plea of contributory negligence and a plea of assumption of risk by the plaintiff.

The reply was a general denial.

The evidence offered by the plaintiff was all the evidence in the case. Defendant offered none. It appeared therefrom that on August 15, 1906, defendant conducted a rolling mill in the city of St. Louis and employed Ed. Drews as master mechanic, Joseph A. Erschen as millwright and plaintiff as a machinist-laborer. Drews, as master mechanic, had authority to hire and discharge all employees, including machinists and millwrights, and to direct and control them in their work. Erschen's duties as millwright required him to take charge of all repair work requiring the taking apart and putting together of heavy machines. Plaintiff ran a machine in the machine shop, working directly under the master mechanic, but from time to time was sent by the latter to work under Erschen. On August 15, 1906, the master mechanic told plaintiff to "work under" Erschen, repairing the squeezer, a heavy machine used in compressing molten iron preparatory to rolling it into bars. Part of the squeezer is a huge, iron, wheel-like contrivance, called a "spider," which weighs several thousand pounds, has a hub, spokes and a rim, and is eight feet in diameter. It fits down on the squeezer, between heavy posts like a wheel lying on its side. Pursuant to the order of

the master mechanic, plaintiff went to the squeezer. Plaintiff had worked with Erschen several times in fixing this same machine and testified that Erschen was always in charge of the work when the master mechanic was not there and gave the orders and directions for the work. On this occasion, to make the necessary repair, the squeezer had to be taken apart and then put together. Erschen with the plaintiff and two laborers, foreigners, proceeded to do this, Erschen being in charge and providing and directing the manner of doing the work. Erschen did some of the work himself but the most of it was done by the plaintiff and the two foreigners under his orders. Once in a while the master mechanic would come around and give orders to Erschen about the work. He had been there and left just before plaintiff was injured. In doing the work the spider had been taken off and set upon some blocks beside the squeezer. It was while it was being replaced that plaintiff was hurt. Always before, four chains had been attached to the chain block and fall which was used in lifting the spider on. They were attached to a big ring in the block and fall, and their four hanging ends fastened around the rim of the spider at equi distant points, distributing the lifting force to four different points on the rim. With the four chains thus used, it was impossible for the spider to tip or turn over while being lifted on. Plaintiff testified: ''Joe Erschen was supposed to take care of that chain (the four chain apparatus) all the time. It was in his charge.''    Another witness testified: ''If any one wanted anything like that the millwright is the man that gets it.'' On this occasion, however, Erschen selected and used a two chain apparatus instead of the four chain, and fastened them on the rim of the spider at opposite points. The evidence shows that the spider could not be raised with any degree of safety by using the two chain apparatus. Erschen was present when the two chains were attached. Plain-

tiff was not; he was over getting a drink of water a hundred and fifty feet away, at the time. When he returned to the spider, the foreigners, doing the pulling, had raised it a little. Erschen was standing on it. Plaintiff, being ordered to do so by Erschen, reached up against the spider to steady it. He asked Erschen "where the 'four-ply chain' was and he said he didn't know. He said we could do it with this all right." Thus the spider was raised some eight feet high and had been moved over and was being lowered between the posts, when suddenly it careened and slipping in its chain fastening, slid obliquely downward and pinioned plaintiff's arm against one of the posts, causing the injury complained of. Other facts will be stated in the opinion proper.

The first and main instruction given upon the part of the plaintiff was as follows, the defendant duly excepting thereto:

"If the jury find from the evidence in this case that on the 15th day of August, 1906, the defendant was using and operating the building, machinery and appliances mentioned in the evidence as a manufacturing establishment for making bar iron;

"And if the jury find from the evidence that on said day the plaintiff was in the service of the defendant as a machinist laborer engaged in the work of aiding in the raising of the spider mentioned in the evidence;

"And if the jury find from the evidence that one Joseph Erschen was at said time in charge of doing the work of raising and adjusting the said spider upon the squeezer (mentioned in the evidence) for the defendant, and authorized by the defendant to provide the means of doing said work and direct and control the manner of doing said work and to command and control the defendant's employees including the plaintiff in doing said work;

"And if the jury find from the evidence in this case that for the work of so raising and adjusting said spider in the manner in which it was being raised to be adjusted, it was necessary for the reasonable safety of defendant's employees, including the plaintiff, that said spider, whilst being so raised to be adjusted to the squeezer, that a chain should be attached at four places on said spider's rim to prevent it from getting out of balance and injuring defendant's employees, including the plaintiff, whilst so at work;

"And if the jury find from the evidence that said Erschen acting as foreman of defendant, if you find he was acting as such foreman, provided for said work, two chains attached to said spider at but two places on said spider and the rim thereof, and directed said spider to be raised with said chains so attached;

"And if the jury find from the evidence that whilst said spider was being raised by direction and control of defendant's said foreman, if you find he was such foreman, said chains, so adjusted on said spider, slipped and said spider became thereby unbalanced and crushed plaintiff's left arm between said spider and a post, whilst he was in the discharge of his said work and thereby it was necessary to amputate said arm between the elbow and the wrist;

"And if the jury find from the evidence that said spider was so caused to slip and become unbalanced and so injure the plaintiff by reason of the insufficiency of said chains attached to it in two places to keep it from so slipping and becoming unbalanced;

"And if the jury find from the evidence that defendant's said foreman (if you find from the evidence the said Erschen was acting as foreman), did not exercise ordinary care in so providing said chains so attached to said spider and did not exercise ordinary care in so directing said spider to be so raised with said chains so attached and thereby *directly contributed to cause plaintiff's said injuries;*

"And if the jury believe from the evidence that the plaintiff was exercising ordinary care at the time of his injury, then the plaintiff is entitled to recover and the verdict should be for the plaintiff."

Here followed directions as to the measure of damages, the burden of proving that the plaintiff was not exercising ordinary care, and the meaning of the words "ordinary care" and "negligence."

CAULFIELD, J. (after stating the facts).—I. In support of its contention that the demurrer to the evidence should have been sustained, defendant first asserts that Erschen was a fellow-servant of the plaintiff at the time of the latters injury. Whether he was a fellow-servant or a vice-principal was a question for the jury. [Radtke v. Basket & Box Co., 229 Mo. 1, 24, 129 S. W. 508.] The proof discloses that the master mechanic ordered plaintiff to work *under* Erschen and that on all repair jobs within his jurisdiction Erschen had exercised superintendence and control over the men working with him. In the absence of countervailing evidence we deem this proof sufficient to justify the inference that Erschen was vested by defendant with the power of superintending control over plaintiff, and that was sufficient to constitute him a vice-principal of the defendant. [Shearman & Redfield on Negligence (5 Ed.), sec. 230; Miller v. Mo. Pac. Ry. Co., 109 Mo. 350, 357, 19 S. W. 58; Smith v. Am. Car & Fdry. Co., 122 Mo. App. 610, 616, 99 S. W. 790; Schmeizer v. Furniture Co., 134 Mo. App. 493, 498, 114 S. W. 1043.]

II. But, further asserts the defendant, if Erschen was a vice-principal and not a fellow-servant, still, under the dual capacity rule the defendant was not liable for Erschen's negligence in this case. The "dual capacity" rule prevails in this state. [Fogarty v. Transfer Co., 180 Mo. 490, 79 S. W. 664; Radtke v. Basket & Box Co., 229 Mo. 1, 23, 129 S. W. 508.]

Under it Erschen represented the defendant and the
defendant is liable for his negligence only in the dis-
charge of duties which the defendant itself should
have discharged, or which rested upon it as absolute
duties. [McKinney on Fellow-Servants, p. 109.] But
for negligence in the discharge of those duties, the
defendant is liable. "The master, by appointing a
foreman or other person to superintend work, with
power to direct the men under him, when and how to
do it, thereby devolves upon such person the perform-
ance of those duties personal to the master." [Miller
v. The Mo. Pac. Ry. Co., 109 Mo. 350, 357, 19 S. W.
58.] "When the negligent act complained of arises out
of and is the direct result of the exercise of the author-
ity conferred upon him (Erschen) by the master over
his co-laborers, the master will be liable." [Railroad
v. May, 108 Ill. l. c. 298, quoted with approval in
Fogarty v. Transfer Co., supra.]

Thus understood, we do not see how the applica-
tion of the dual capacity rule can relieve defendant
from liability in this case. The negligence charged
here is in the furnishing by Erschen, the vice-princi-
pal, of an improper appliance, and in directing that
the work be done with it, and the evidence sustains
the charge. It was the duty of the defendant to exer-
cise reasonable care to furnish appliances for its ser-
vants in the performance of their duties which are
reasonably safe, suitable and fit for the designed use.
[Gutridge v. The Mo. Pac. Ry. Co., 105 Mo. 520, 525,
16 S. W. 943; Nicholds v. Plate Glass Co., 126 Mo.
55, 64, 28 S. W. 991; Craig v. Chicago & Alton Ry.
Co., 54 Mo. App. 523, 526.] This duty was an abso-
lute and personal one. [Dutzi v. Geisel, 23 Mo. App.
676, 683; Herdler v. Buck Stove & Range Co., 136
Mo. 3, 15, 37 S. W. 115; Rodney v. The St. Louis
Southwestern Ry. Co., 127 Mo. 676, 689, 28 S. W. 887,
30 S. W. 150.] It was then one which was vested in
Erschen as vice-principal and for the negligent exer-

cise of which, by him, the defendant was liable. [Miller v. Mo. Pac. Ry. Co., 109 Mo. 350, 357, 19 S. W. 58.]

But the defendant urges that it had provided a four-chain apparatus and it was safe and suitable and in the custody of Erschen; that in rendering the sufficient apparatus available to Erschen the defendant performed its entire duty, and that his selection of an unsafe apparatus when there was a safe one available was the act of a mere fellow-servant for which defendant was not liable. We are not satisfied that on this occasion the four-chain apparatus was available. The only evidence in that respect is that always before it had been used and that Erschen had charge of it; but on this occasion Erschen the sole custodian of it failed to produce it when required and said he did not know where it was. But plaintiff makes no point that the evidence was deficient in that respect and we will assume that in the proper storage room of defendant's foundry there were two appliances, one safe and the other unsafe, both equally available to Erschen, and that he selected and produced the unsafe one. Did he in thus selecting the unsafe one and acting concerning it as the evidence discloses that he did, act as a fellow-servant or vice-principal? In support of its contention that he acted as a mere fellow-servant the defendant cites Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934, where the court reached the conclusion that where the master buys a mass of raw material, some bad and some good, a result incident to all buying by the quantity in the market, and entrusted the selection out of this mass to carpenters employed to build the scaffold therewith, if one of said carpenters selected a bad board, it was the act of a fellow-servant for which the master would not be responsible. That is to say, that the master might trust the servant to perform the ordinary and simple duties incident to the servant's employment and resting upon the servant's

knowledge and skill.  Defendant argues that if the selection of the plank or other appliance can be left to a fellow-servant without the master being liable for his negligence in making it, therefore, on the theory that the question of liability is to be determined by the *act* and not the *rank,* if a vice-principal makes the selection, he is performing the act of a mere fellow-servant for which the master is not responsible.  But our Supreme Court on two occasions has distinguished the Forbes case from one where the *foreman* makes the selection, and held that when the foreman makes the selection it is the act of the master for which the latter is responsible.  [Combs v. Construction Co., 205 Mo. 367, 104 S. W. 77; Kennedy v. Gas Light Co., 215 Mo. 688, 115 S. W. 407.]  This is with good reason. The master might be said to have performed that duty by providing safe appliances and entrusting their selection to the judgment of his servants, but if he does not entrust such selection to a mere servant, but undertakes to make it himself, he must exercise due care in making such selection.  [Combs v. Construction Co., supra.]  If it is so with the master it is so with one having superintending control over the men; for, as we have mentioned, the matter of furnishing safe and suitable appliances is a personal duty of the master devolving upon the vice-principal, and the latter's conduct in that respect is to be judged by the same rule as would be that of the master if acting in person.  "In controlling and directing structures, in employing and dismissing operatives, in *selecting machinery* and *tools,* thus he speaks the language of a master.  Then he issues their orders to their operatives.  Then he is the mouthpiece and interpreter of their will.  Their voice, which is silent, is spoken by him.  He, then, only speaks their executive will; not the irresponsible will of a fellow-workman or co-laborer.  The corporation can speak and act in no other way.  His executive acts are their acts; his negligence

is their negligence, his control, their control. He has in this executive duty no equal. He is not, while in the performance of these executive duties, only the equal of the common co-laborer or co-servant.'' [Harper, by Wood v. Indianapolis & St. Louis Ry. Co., 47 Mo. 567, 580.]

It may be added, too that where, as here, one in authority produces a single appliance and expressly or impliedly directs the men to use it, there is involved something more than would a selection by a mere servant. In the latter case the co-servants would have some discretion to reject, to refuse, to go after the appropriate appliance. In the former case the selection is blended with command, direction and assurance. The selection is an implied command to use, which the servant has a right to presume is given carefully, absent danger so obvious that a reasonable man would not risk it. We are satisfied too that where the vice-principal produces only one appliance and directs it to be used, that is the only appliance which is ''provided'' in attempted compliance with the duty of the master. There may be others, but if they are not produced, especially where as here their whereabouts are unknown, they are not provided but remain *unprovided*.

We rule that defendant's demurrer to the evidence was properly overruled.

III. Defendant contends that plaintiff's first and main instruction is erroneous because it authorizes the jury to find for the plaintiff if they believe from the evidence that the facts predicated therein ''directly *contributed* to cause plaintiff's said injuries.'' This instruction is set out at length in our statement of facts and need not be repeated here.

There is evidence in the case tending to show negligence on the part of defendant and evidence tending to show contributory negligence on the part of the

plaintiff, but no evidence whatever tending to show that there was any independent cause contributing to the injury. With the evidence in that state it has been recently held by our Supreme Court to be reversible error to give an instruction using the words "contributed to cause the injury," for the reason that such an instruction is indefinite and inconsistent and liable to be very misleading and confusing to the average jury, either causing them to speculate as to unknown causes which might have contributed, with defendant's negligence, to cause plaintiff's injury, or to assume that plaintiff might recover if his injury was caused by his own negligence, contributed to by the negligence of the defendant. [Hof v. Transit Co., 213 Mo. 445, 111 S. W. 1166; Krehmeyer v. Transit Co., 220 Mo. 639, 120 S. W. 78.] Following these controlling authorities this court condemned similar instructions in the following cases: Schmidt v. Transit Co., 140 Mo. App. 182, 120 S. W. 96; Wilson v. Railways Co., 142 Mo. App. 676, 121 S. W. 1083; Garrett v. Wabash Railroad Co., 159 Mo. App. 63, — S. W. —. The reason for the ruling is fully discussed in those cases.

Plaintiff suggests that there is no evidence of contributory negligence in the case. We cannot agree to this. Plaintiff testified in effect that he was an experienced machinist, familiar with the proper manner of lifting the "spider," and that he had seen the "spider" lifted and had helped to lift it, several times, always using the four-chain apparatus. One of his witnesses, a machinist, testified as an expert, that the spider could not be raised "with any degree of safety" by using the two-chain apparatus. The plaintiff testified as already noted that while the machine was being hoisted he asked Erschen where the four-chain apparatus was and that the latter said he did not know and that "we could do it with this all right." This evidence tended to prove that plaintiff worked

with the two-chain apparatus knowing it to be unsafe and thus the question of his conrtibutory negligence arose, and having been pleaded, was in the case. But plaintiff asserts that while in the instruction he relied only upon the negligence of the defendant in providing an insufficient appliance and in directing that the spider be raised with it, there was also pleaded and proved defendant's failure to secure "said spider from becoming unbalanced whilst being so raised," and it was this failure, together with the negligence relied upon in the instruction, that contributed in causing plaintiff's injury. If the pleading and proof were in the state thus assumed by the plaintiff the instruction would still be defective. In order to excuse the use of the words "contributed to cause" in an instruction "they should always be so safeguarded as to exclude the idea that the concurring negligence of plaintiff and defendant will permit a recovery." [Krehmeyer v. Transit Co., 220 Mo. l. c. 675, 120 S. W. 78.] The instruction should indicate to the jury what the fact was which contributed to defendant's negligence in causing the injury, or it is indefinite and misleading [Hof v. Transit Co., supra.]; especially where, as it is claimed here, that fact is other negligence of the defendant confessedly not relied upon by the plaintiff as a basis for recovery. [Garrett v. Wabash Railroad Co., supra.]

For the error in giving this instruction at plaintiff's instance the judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.