JIM DALES, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted November 12, 1912. Opinion Filed December 14, 1912.

1. **MASTER AND SERVANT: Injury to Servant: Conflict of Laws.** In an action for personal injuries sustained by a servant while in the employ of defendant in another State, the rights of the parties are to be determined by the law of such State.

2. ————: **Law of Illinois: Fellow-Servant Rule: Dual Capacity Rule.** Both the fellow-servant and the dual capacity doctrines obtain in Illinois.

3. ————: ————: ————: ————: **Applicability.** Where, in an action for personal injuries sustained by a servant, the negligence charged was, that defendant furnished plaintiff with a defective chisel, and while plaintiff was working with it, under the direction of the foreman, a piece flew from it and hit him in the eye, neither the fellow-servant nor the dual capacity doctrine applied, since the negligence charged was not in the use of the chisel, but in furnishing a defective one, and the duty of the master with respect to this matter was not delegable.

4. ————: **Duty of Master: Vice Principal.** As a general rule, the doctrine of vice principal exists to this extent and no further, viz., that it is precisely commensurate with the master's personal duties toward his servants—as to these, the servant who represents the master may be called a vice principal, for whose acts and neglects the master is liable; but beyond this the master is liable only for his own personal negligence.

5. ————: Law of Illinois: Furnishing Tools: Duty of Master: Assumption of Risk. Under the law of Illinois, the master is bound to exercise ordinary care to furnish reasonably safe tools to his employees and to keep such tools in a reasonably safe condition for use, and he cannot relieve himself from the performance of this duty by delegating it to another, nor do his employees assume the risk of injury from his negligence in the discharge of it.

6. ————: ————: ————: ————: Injury to Servant: Sufficiency of Evidence. In an action for personal injuries sustained by a servant from a defective chisel while in the employ of defendant in the State of Illinois, *held*, under the evidence, that the question of whether defendant was guilty of negligence in furnishing a defective chisel was for the jury.

7. TRIAL PRACTICE: Order of Receiving Evidence: Anticipating Defense. In an action for personal injuries sustained by a servant while in the employ of defendant in another State, where defendant pleaded the law of such State as a defense, it was not error for the court to allow plaintiff to introduce decisions of the appellate courts of that State as part of his case in chief, since the order in which testimony is to be admitted is a matter wholly within the discretion of the trial court.

8. NEGLIGENCE: Instructions Given for Plaintiff: Covering Contributory Negligence. In an action by a servant for personal injuries, an instruction for plaintiff, which covered the whole case, *held* to correctly include the defense of contributory negligence.

9. DAMAGES: Measure of Damages: Personal Injuries: Instructions. In an action by a servant for personal injuries, *held*, that the instruction on the measure of damages was free from error.

10. MASTER AND SERVANT: Assumption of Risk: Instructions: Abstract Instructions. In an action by a servant for personal injuries, the court charged, on behalf of plaintiff, that, by entering and continuing in the employ of the master, the servant assumes the risk of being injured as a result of the hazards usual and incident to the employment, when the business is conducted by the master with that degree of care usually and customarily exercised by reasonably prudent men engaged in conducting the same or a similar business; that the servant does not assume the risk of being injured as the result of negligence on the part of the master. *Held*, that the instruction correctly stated the law, and that when considered, as it should be, with the other instructions given, it could not have confused the jury, and was not, therefore, erroneous as being a mere abstract charge.

11. **INSTRUCTIONS: Abstract Instructions: Cured by Other Instructions.** The giving of a general instruction is not reversible error, if, considering it in connection with the other instructions, it could not have possibly confused the jury.

12. **MASTER AND SERVANT: Injury to Servant: Failure to Furnish Tools: Fellow-Servants: Instructions.** In an action by a servant for personal injuries, an instruction that plaintiff could not recover if the injury was caused by negligence of a fellow-servant, was properly refused as inapplicable, where the injury was caused by a defective tool in the hands of another employee; the duty of the master to furnish proper tools not being delegable.

13. ———: ———: **Fellow-Servants: Instructions.** Although the question of whether two servants were fellow-servants is a question of fact to be determined by the jury, yet there must be some substantial evidence that the parties were fellow-servants, to render the refusal of an instruction thereon error.

14. ———: ———: ———: **Instructions: Not Applicable to Issues.** In an action by a servant for personal injuries, where the issue was whether or not defendant was negligent in furnishing a defective tool, an instruction requested by defendant, directing a finding for it if the injury was caused by the negligence of a fellow-servant, was properly refused, for the reason that it would have been misleading, as tending to convey the idea that the injury occurred through the negligent handling of the tool.

15. ———: ———: **Assumption of Risk: Instructions: Abstract Instructions.** In an action by a servant for personal injuries, an instruction requested by defendant, that if the risk was apparent to a person of ordinary care and prudence, plaintiff assumed the risk incidental to his employment, was properly refused, for the reason that it would have been misleading, as stating a mere abstract proposition of law without advising the jury as to what constituted an "assumption of risk incident to the employment."

16. **INSTRUCTIONS: Refusal: Not Founded on Testimony.** It is not error to refuse an instruction which submits a theory not justified by any substantial evidence.

17. **EVIDENCE: Predicating Statement on Hearsay: Probative Force.** Where, in an action for personal injuries, plaintiff testified on direct examination that a piece of steel which struck his eye came from a certain chisel, and on cross-examination testified that he knew it came from the chisel because he had been told that it fitted back in where a piece was broken out, the court did not err in refusing to strike out the testimony he gave on direct examination, since his sub-

sequent testimony, explaining how he knew that fact, was before the jury, and the probative force of his testimony was for their determination, under all the testimony in the case.

18. ———: Admissibility: Master and Servant: Injury to Servant: Defective Tools. In an action for personal injuries to a servant, alleged to have been due to a defective tool, evidence by defendant's assistant foreman, that he had thrown the tool away prior to the injury, because of its defective condition, and had called the foreman's attention to its condition, was admissible, although he contradicted himself and was contradicted by other witnesses in regard to the immaterial fact as to distance the place where he threw the tool away was from the scene of the accident.

19. ———: ———: ———: ———: ———. In an action for personal injuries to a servant, alleged to have been due to a defective tool, an objection for immateriality to a question propounded by counsel for defendant, "Did all the gang see the chisel every day?" held properly sustained; and a motion by counsel for plaintiff to strike out a statement by a witness, that he thought plaintiff would have seen the chisels every day, held properly sustained.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.

*Robert & Robert* for appellant.

(1) As the injury occurred in Illinois, the liability of the defendant must be determined by the laws of that State, the defendant having pleaded and proved them. Fogarty v. Transfer Co., 180 Mo. 490; Root v. Railroad, 195 Mo. 348; Ginnochio v. Railroad, 155 Mo. App. 163; Farrar v. Railroad, 149 Mo. App. 188; Chandler v. Railroad, 127 Mo. App. 34. (2) It was error to permit the introduction of any Illinois decisions in evidence by the plaintiff, not having been pleaded. Ginnochio v. Railroad, 155 Mo. App. 163. (3) The demurrer to the evidence should have been sustained, as the injury was caused by a fellow-servant, and the Fellow-Servant Law is in force in Illinois. Farrar v. Railroad, 149 Mo. App. 188; Chandler v. Railroad, 127 Mo. App. 34; Steel Co. v. Coffey, 205 Ill.

206; Wells v. O'Hare, 209 Ill. 627. (4) Hammon, the foreman, at the time was acting as a colaborer, and his negligent act might just as readily have happened with another laborer having no authority, and the master is not liable. Anderson v. Higgins, 122 Ill. App. 454; Baier v. Selke, 211 Ill. 512; Fogarty v. Transfer Co., 180 Mo. 490; Railway v. Simmons, 11 Ill. App. 147; Railroad v. Goetz, 71 Ill. App. 414. (5) Plaintiff assumed the risk of such an accident. He was entirely familiar with the tools with which he was working, a hammer and a chisel, and with the fact that chips fly from them as well as the railroad rail. It was not complicated machinery, and plaintiff had equal knowledge with the company as to its nature and condition. Webster v. Nisbett, 205 Ill. 273; Chandler v. Railroad, 127 Mo. App. 34. (6) Instructions must be based upon the evidence as well as the pleadings. Danker v. Goodwin Mfg. Co., 102 Mo. App. 723; Haworth v. Railroad, 94 Mo. App. 215; Marr v. Bunker, 92 Mo. App. 651; Day v. Railroad, 81 Mo. App. 471; Robertson v. Railroad, 152 Mo. 382; Waddingham v. Hulett, 92 Mo. 528; Price v. Railroad, 77 Mo. 508.

*Blevins & Jamison* for respondent.

(1) Under the rule at common law, which prevails in the State of Illinois, where the accident occurred, and also as shown by the adjudicated precedents of that State introduced in evidence, defendant was liable for negligence in failing to exercise reasonable care to furnish a chisel that was reasonably safe. It is also the duty of the master to exercise reasonable care to keep in repair and reasonably safe condition for use tools and appliances provided by it for use by its servants. Pullman Palace Car Co. v. Laack, 143 Ill. 242. And he cannot relieve himself from responsibility for its performance by delegating it to another. Lumber Co. v. Ligas, 172 Ill. 315; Coin v. Lounge Co., 222 Mo. 488; Chenoweth v. Sutherland,

129 Mo. App. 431; Iron Works v. Weber, 129 Ill. 535; Labatt on Master & Servant, vol. 1, secs. 7, 8, 9, pages 8-11. (2)  The master is liable for an injury received by a servant while obeying the master's orders to perform the work in a dangerous manner.  Chicago Hair Co. v. Mueller, 203 Ill. 558.  If a master confers authority upon one of his employees to take charge of and control a certain class of workmen in carrying out a particular branch of business, such employee is the representative of the master.  And the men need not make a critical examination of their surroundings, but may rely upon the foreman's performance of his duty, and such employee is a representative of the master, not a fellow-servant.  City of LaSalle v. Kostaka, 190 Ill. 130.  A servant is not bound to make an examination for defects, and he may act upon the presumption that the master has used reasonable care.  Lumber Co. v. Ligas, supra.  The acts of the person authorized by the master are acts of the master.  Pullman Palace Car Co. v. Laack, supra.  (3)  Under the law of Illinois, a servant does not assume or contract to waive the liability of the master for his own negligence, whether committed in person or by an agent authorized by the master to perform a duty resting on him. Sambos v. Railroad, 134 Mo. App. 460; Pullman Palace Car Co. v. Laack, supra; Chicago Hair Co. v. Mueller, supra; Dakan v. Mercantile Co., 197 Mo. 267; George v. Railroad, 225 Mo. 406; Railroad v. Spurney, 197 Ill. 471; Railroad v. Gilson, 173 Ill. 264.  (4) Where a master gave a servant superintending control over the men working with him in doing certain work, such servant, in selecting from the storeroom an unsuitable apparatus for the work over which he had superintending control was acting as a vice-principal and not as a fellow-servant, since the selection of a suitable apparatus was an absolute and personal duty on the part of the master.  Gale v. Mill Co., 159 Mo. App. 639; Sambos v. Railroad, 134 Mo. App. 460.  (5)

It was not error for the court to permit plaintiff to have noted in the record the style of the case, the number of report and page of opinions of the appellate court decisions of the State of Illinois offered by plaintiff. Plaintiff in his petition did not rely upon any statute of Illinois nor upon any adjudicated cases construing a statute of that State. The opinions in no wise change or modify the rule at common law. They were for the court's consideration only and if entitled to any probative force they were at least competent in rebuttal, and the court very properly held that in the exercise of its discretion the opinions might be marked and identified at the close of the plaintiff's case in chief. Evers v. Ferry Co., 127 Mo. App. 236. (6) Plaintiff, on direct examination, testified that the fragment of steel from the chisel cut his eye. He so testified without objection. The defendant's counsel, after cross-examining plaintiff at some length as to his knowledge and information upon which he based his statement that the fragment came from the chisel, moved the court to strike out the whole of plaintiff's evidence on that point. It was not error for the court to deny this motion and to rule as follows: "Well, the jury have heard the testimony. He made the statement and your cross-examination has explained it and I will allow it to stand." Semple v. Railroad, 152 Mo. App. 29. Outside of any other question the motion came too late. Good v. Mining Co., 154 Mo. App. 595; Carpenter v. Match Co., 141 S. W. 1152.

STATEMENT.—Action by plaintiff against defendant, appellant here, for damages on account of loss of his eye while engaged in the employment of appellant. It is set out in the petition that plaintiff, in the performance of his duty, was assisting in the work of cutting off the end of an iron or steel rail, under the eye and immediate supervision and direction of defendant's foreman; that under the direction of the

foreman plaintiff was holding the rail in place while the foreman was himself holding a heavy iron or steel chisel upon the rail and another employee of defendant was, by direction of the foreman, using a sledge hammer and striking the chisel heavy blows with it for the purpose of cutting the rail in two; that defendant carelessly and negligently failed to exercise reasonable and ordinary care to furnish for the use of its employees a chisel that was reasonably safe for the purpose of cutting the rail, "but carelessly and negligently furnished a chisel that was old and badly worn down from long use and heavy licks that had long been applied to it, and the top of the chisel was worn, cracked, rough and scaled, and the edges of the top thereof were uneven, worn and jagged, all of which made the chisel unreasonably unsafe for the purposes for which it was intended to be used, and for which it was then and there at the time being used, because of danger of the pieces of the top of the chisel breaking off when struck any licks with the sledge hammer, as it was necessary that it should be struck, and it was then and there at the time being struck, by direction of defendant's foreman." That the condition of the chisel and the danger incident to the use thereof for the purposes for which it was being used were well known to defendant, or by the exercise of ordinary care on its part would have been known to it, for it furnished the chisel for use on that occasion, but plaintiff did not know and did not have equal opportunity with defendant for knowing the condition of the chisel referred to and the danger incident to the use thereof for the purposes for which it was then and there being used; that while plaintiff was holding the rail in place and the chisel was being held on the rail by the foreman and was being struck heavy blows by the hammer by direction of the foreman in order to cut the rail, "and as a result of the defective condition of the chisel when it was so struck a small piece of the top of the chisel flew into plaintiff's

left eye, inflicting serious injury thereto, so that it became necessary for plaintiff to have the eyeball of that eye entirely removed.'' Damages are demanded in the sum of $1999.

The answer, after a general denial, avers contributory negligence on the part of plaintiff and that of his fellow-servants and employees; that the accident whereby plaintiff alleges he was injured occurred in the State of Illinois; that under the laws of that State plaintiff is not entitled to recover against defendant for any act of negligence of his fellow-servants or colaborers resulting in injury to him. It is further charged in the answer that the injury, if any, resulted from the risk incident to plaintiff's employment; that it could not have been foreseen by defendant if not by plaintiff and was a risk assumed by plaintiff by reason of his employment.

To this a general denial by way of reply was filed.

The cause was heard before the court and a jury. Plaintiff testified, in substance, that he was a Greek; was employed by defendant with about fifty-five other Greeks, who were working for defendant, near Winchester, Illinois, under the direction of one Hammon, the head foreman. The force was divided into different gangs, all working along defendant's track and under the general supervision of this foreman, who gave directions to the separate divisions or gangs; that on the day plaintiff was injured he was working in a subdivision or gang of twelve men over which Hammon, the foreman, had immediate control, he being the only one who gave orders. Part of the time in the course of his employment plaintiff spiked ties and at other times picked up and assisted in the work of lifting up and putting rails upon the track. A subdivision or assistant foreman, named Fache, was there at the time and acted as interpreter between the foreman and the laborers. The foreman told plaintiff to hold the rail which was about to be cut. Hammon

was holding the chisel and plaintiff had hold of the rail about eight or ten feet back from this chisel. When the first blow was struck on the chisel plaintiff was standing up and the foreman told him to hold the rail and he sat on it. Another laborer was striking the chisel under the direction of the foreman and while plaintiff was still holding the rail a piece of the chisel flew off and hit plaintiff in his left eye. He was taken to a surgeon and the splinter immediately taken out of the eyeball and the eyeball removed. Plaintiff testified that he had never examined the chisel or seen it either before or after the time of the accident. On cross-examination plaintiff testified that he had not seen this chisel or the chisels and other tools used on the track; they were scattered about and there was a man employed to pick them up.

Fache, the assistant foreman, testified for plaintiff to the effect that on the morning of the accident he (Fache) had a chisel with which he had been cutting rails; it was not a good one; had been cutting rails two or three times that morning; cut the last rail about half past eleven o'clock; the chisel he had used was mashed on the top; had been used too many times; was split and cracked into about two or three cracks; used that chisel in the morning and a little piece flew off and he threw the chisel to the other side of the fence and told the foreman, Hammon, not to use it any more; threw it away because he did not want to work with it; was afraid he would get hurt; had told the foreman that when he (witness) cut the rail, that this was a poor chisel; didn't like to use it himself to cut rails and didn't want to work with that chisel. Witness told Hammon that he would throw it away; would not use it; threw it over the fence. The foreman was standing there at the time witness told him this. Witness did not see the accident happen to plaintiff but saw him five or ten minutes after he was hurt; saw blood running from his eye and took him to the surgeon at

Winchester; saw the surgeon take a little piece of steel out of plaintiff's eye; it was about a half inch wide and narrow so that it was about an eighth of an inch at the end. The hammer they were using was in good condition; was a ten pound hammer. On cross-examination witness repeated that he had thrown the chisel over the railroad barbed wire fence; that the tools the gang were working with consisted of tongs, chisels and crowbars and were scattered along the track; that on the day of the accident they had about four chisels, the others having been sent away for repair; did not know who went after the chisel he had thrown away and brought it back; saw it again after plaintiff was hurt, close to the track; knew it was the same chisel that had been used at the time plaintiff was hurt; that the use of the chisel in cutting rails causes the head to be battered down; any person who was a striker or holder of a chisel could see that it would batter down in the course of the work; laborers could see it when they went by.

Another witness, testifying for plaintiff, stated that he was the one who used the hammer on the day of the accident, the foreman having hold of the chisel. He saw the piece fly off of the chisel, the top of which was cracked in two or three places. While he was hitting with the hammer a piece flew and hit Dales in the eye. The whole top of the chisel was turned down; had seen Fache, the assistant foreman, throw this chisel away and had seen Hammon, the foreman, pick up the same chisel by the fence where Fache had thrown it; that was the same chisel Hammon was holding in his hand when plaintiff was hurt. Witness had struck two blows on the chisel and at the third blow the plaintiff was hurt. At that time the chisel was being held in place by the foreman and was resting on the middle side of the top of the rail. After plaintiff was hurt they took him to the doctor and they took

the piece out and brought it back and proved it was from the same chisel; took the piece and fit it in that chisel. On cross-examination this witness testified that he saw Hammon, the foreman, fetch the chisel and cut the rail with it. Hammon had the chisel in his hand when he was climbing the fence; was about a rail or two distant from the assistant foreman when the latter was talking to the foreman about the chisel. He heard the assistant tell Hammon not to take that chisel back; that it was no good.

Another witness testified that he had seen Fache, the assistant foreman, throw the chisel away that morning; saw him throw it outside the fence and saw the foreman get it after dinner and start to cut the rail with it. When the piece of steel hit plaintiff in the eye, he (plaintiff) was about four feet from the striker. On cross-examination witness testified that he saw the foreman climb over the fence and get the chisel that Fache had thrown away and that when the foreman picked up the chisel he came back and started to work again. The foreman began cutting rails immediately after he got this chisel; saw the piece of steel taken out of plaintiff's eye at Winchester; it was about half an inch long and three-eighths of an inch wide at the top, tapering to a point.

This was substantially the testimony for plaintiff save that which related to the treatment of the surgeon and the length of time he was laid up and the impairment of his capacity to work by the loss of his eye.

At the conclusion of the oral testimony plaintiff offered and introduced in evidence several decisions of the Supreme Court of the State of Illinois, defendant objecting on the ground that these were immaterial; that plaintiff had not pleaded the law of Illinois and had no right to anticipate the defense pleaded, as defendant might not choose to use that itself. The court overruled this and permitted the offered reports of the decisions to be considered in evidence. It does not ap-

pear that any of these decisions were read to the jury, the decisions relied on being referred to by title and volume. At the close of this evidence on the part of plaintiff, defendant interposed a demurrer to the evidence which the court refused to give, defendant excepting.

To sustain its defense defendant offered in evidence certain decisions of the Supreme and appellate courts of Illinois. The oral evidence of defendant tended to contradict a good deal of the testimony given by plaintiff and tended to show that plaintiff had an opportunity to observe the chisel that was being used and also tended specifically to contradict the testimony as to the chisel which was used by the foreman on this occasion being the one which had been thrown away by the assistant foreman on the morning of the day of the accident. At the conclusion of the evidence in the case defendant again interposed a demurrer in the form of an instruction to find for defendant for failure of evidence, which was refused.

The court gave several instructions at the instance of plaintiff as well as at the instance of defendant, refusing, however, in addition to the instruction for a verdict for defendant, one of them, to the effect that if the jury found and believed from the evidence "that the injury to plaintiff mentioned in the evidence was caused by the negligence of a fellow workman of the plaintiff, while engaged in the common work of cutting the iron or steel rail mentioned in the evidence," then their verdict must be for defendant. Another instruction, asked by defendant and refused, was to the effect that if the jury believed from the evidence that the risk of injury from using the chisel mentioned in the evidence was apparent to a person of ordinary care and prudence, then plaintiff assumed the risk incidental to his employment, and their verdict must be for defendant. The third instruction asked by defendant and refused was to the effect that if the jury be-

lieved from the evidence that the piece of iron or steel which struck plaintiff's eye was detached from the rail that was being cut at the time mentioned in the evidence, plaintiff was not entitled to recover.

During the course of the trial, a witness for plaintiff, being under cross-examination by counsel for defendant, testified that he had seen the chisel in question about every day; that it was with the other tools and chisels right along. Counsel for defendant asked this question: "Did all the gang see the chisel every day?" This was objected to as being immaterial whether they saw it every day or not. The objection was sustained and defendant excepted. Under cross-examination the same witness was asked by counsel for defendant if he knew whether plaintiff saw those chisels every day. He answered, "I don't know. He was working on the track. I think he would have seen them." Counsel for plaintiff moved to strike out that part of the statement as to what witness thought. This motion was sustained, defendant excepting.

During the cross-examination of plaintiff he testified that he felt something hit him in the eye but did not see where it came from; saw it when it was taken out of his eye which was the first time he saw it; that it came from the chisel. He was asked how he knew that it came from the chisel. He said because the boys got down and found the chisel and put the piece on it and it fitted. He had not seen that but the rest of the boys had told him; that it was from what some one else had told him that he had testified that he saw that the piece came from the chisel. Whereupon counsel for defendant asked that all the testimony given by plaintiff in regard to the chip coming from the chisel be stricken out on the ground that it was hearsay. It appears that in his direct examination plaintiff had stated that the chip came from the chisel and this cross-examination was in explanation of his knowledge. Passing on the motion of defendant to strike out all

this testimony as hearsay, the court said: "Well, the jury have heard the testimony. He made the statement and your cross-examination has explained it and I will allow it to stand," which ruling was duly excepted to by counsel for defendant.

The jury returned a verdict in favor of plaintiff for $1000, and defendant, interposing its motion for a new trial and that being overruled and exception saved, has duly perfected its appeal to this court.

REYNOLDS, P. J. (after stating the facts).—Let us consider this case in the order of the assigned errors.

1. We have, even with some prolixity, set out the facts in the case in so far as necessary to consider the demurrers or, more accurately, requests for instructions directing a verdict for defendant. This accident occurred in Illinois and the rights of the parties are to be determined by the law of that State (Fogarty v. St. Louis Transfer Co., 180 Mo. 490, l. c. 502, 79 S. W. 664), a State which has no statute on the subject, and whose law is to be arrived at by consideration of the decisions of its courts. An examination of those decisions demonstrates that Illinois recognizes and is governed by the common or general law, under which one servant is held for the negligent acts and conduct of another, briefly, what is known as the "fellow-servant" law. The courts of Illinois also recognize what is known as the "dual capacity" rule, as has also been generally done by our own courts. [See Fogarty v. St. Louis Transfer Co., supra., l. c. 503.] We hold that the case before us is not one for the application of either doctrine, but is one for the application of the law relating to employer and employee, the former represented in the accident by one who stood in the position of vice-principal in directing the plaintiff. On this we find no difference between our law and that

of Illinois, both proceeding substantially on the lines of the common law.

The very best statement of the general law on the subject which we have found is in an article by former Judge John F. Dillon, in 24 American Law Review, 173, entitled "American Law Concerning Employer's Liability," published March-April, 1890. There at page 189, Judge Dillon says: "In the general American law as I understand it, the doctrine of vice-principal exists to this extent and no further, viz., that it is precisely commensurate with the master's personal duties towards his servants; as to these the servant who represents the master is what we may for convenience call a vice-principal for whose acts and neglects the master is liable. Beyond this the employer is liable only for his own personal negligence. This is a plain, sound, safe and practicable line of distinction. We know where to find it and how to define it. It begins and ends with the personal duties of the master." [See, also, Gale v. Helmbacher Forge & Rolling Mill Co., 159 Mo. App. 639, 140 S. W. 77.]

We find nothing in the decisions from the Illinois courts that at all contradicts this doctrine. This is not a case of negligence in the use of the tool but of negligence in furnishing an imperfect tool. That distinguishes it from Farrar v. St. Louis & S. F. R. Co., 149 Mo. App. 188, 130 S. W. 373, a decision by the Springfield Court of Appeals which learned counsel for appellant claim is "on all fours" with the case at bar. Counsel are mistaken in that assumption. That case was for the negligent use of the appliance, not for a defect in the appliance itself. The same may be said of Illinois Steel Co. v. Coffey, 205 Ill. 206, also greatly relied upon by counsel for appellant. In Webster Manufacturing Co. v. Nisbett, 205 Ill. 273, also relied upon by that counsel as paralleling the case at bar, the very marked distinction is that there the decision is distinctly placed upon the ground that the

employee who was injured had had long experience in the use of the hammer through which the injury occurred, in the business of a blacksmith, and that with this knowledge he assumed the ordinary risks incident to handling the hammer. That is not the case here. Furthermore, the Nisbett case proceeded on the failure to perform, the promise to repair.

Under the law of Illinois, the employer is bound to exercise reasonable care in furnishing reasonably safe tools to his employees and to keep those tools in reasonably safe condition for use for the purposes for which they are employed. [Pullman Palace Car Co. v. Laack, 143 Ill. 242, l. c. 255.] And in that State, as well as in our own, he cannot relieve himself from the performance of that duty by delegating it to another. [Pullman Palace Car Co. v. Laack, supra; Hines Lumber Co. v. Ligas, 172 Ill. 315, l. c. 317; Coin v. Talge Lounge Co., 222 Mo. 488, l. c. 505, 121 S. W. 1.] Nor, under the law of Illinois, does the employee assume the risk of injury from his employer's negligence in the discharge of that duty. [Sambos v. Cleveland, C., C. & St. L. R. Co., 134 Mo. App. 460, l. c. 468 and cases there cited (114 S. W. 567).]

On the law and under the evidence, this was a case for the jury, and the verdict and judgment must stand unless there was error in the matter of giving or refusing instructions or admission or exclusion of testimony.

2. We see no error in the admission of the decisions of the Supreme Court of Illinois offered by plaintiff. The order in which testimony shall be admitted is entirely in the discretion of the trial court. Defendant had distinctly pleaded the law of Illinois as applicable and it was within the right of plaintiff, if he chose to assume that burthen, to put in such testimony as he had tending to prove that law.

3. Careful consideration of the instructions given at the instance of plaintiff fails to disclose any re-

versible error in them, any error which would mislead
the jury. The first, of which complaint is made, fol-
lowed the language of the petition in the case, with
this addition: That it took up the defense of contrib-
utory negligence which was pleaded, thus: "If you fur-
ther find from the evidence that plaintiff did not know
of the said condition of said chisel and did not know
that the same was not reasonably safe for the purpose
for which it was being so used, and that plaintiff
would not have known thereof by the exercise of rea-
sonable care for his own safety, and that plaintiff had
no means or knowledge thereof equal with those of
defendant, and that plaintiff was at all said times and
in relation to the accident in question, in the exercise
of ordinary care for his own safety, then you will find
and return a verdict for plaintiff." The instruction,
covering the whole case, correctly included in it the
defense of contributory negligence which had been set
up as a defense. We think this first instruction good
in law and supported by substantial testimony.

The second instruction was as to the measure of
damages and contains no error whatever.

The third told the jury that by entering and con-
tinuing in the employ of the master the servant as-
sumed the risk of being injured as the result of the
hazard usual and incident to the employment when the
business is conducted by the master with that degree
of care usually and customarily exercised by reason-
ably prudent men engaged in conducting the same or
similar business; that the servant does not assume the
risk of being injured as the result of negligence on
the part of the master. It is objected to this instruc-
tion that it is a generalization. It has been often held
that it is error to give a mere general instruction, but
following the rule, which is well settled in this State,
that instructions are to be considered together, we do
not think this particular instruction falls under that
designation. Considering it in connection with the

other instructions given at the instance of plaintiff and of defendant, it could not possibly have confused the jury. The proposition of law stated is correct and we see no reversible error in giving it.

The fourth instruction is as to ordinary care and is unobjectionable.

The court gave four instructions at the instance of defendant. Reading them with the instructions given at the instance of plaintiff, we think they fully and fairly present the issues to the jury. Nor do we think that the instruction marked 7, given at the instance of defendant, is in any way inconsistent with anything said in the first instruction given at the instance of plaintiff.

The refused instructions marked B, C, D and E were properly refused.

The instruction marked B was an instruction that under the pleadings and the evidence plaintiff was not entitled to recover. We have disposed of this point before, treating it as a demurrer, and hold that this instruction was properly refused.

Instruction marked C is in substance that if the jury believed from the evidence that the injury to plaintiff mentioned in the evidence was caused by the negligence of a fellow workman of plaintiff while engaged in the common work of cutting the iron or steel rail mentioned in the evidence, their verdict must be for defendant. That instruction was properly refused because the question of the duty of the employer was properly covered by the first instruction, given at the instance of plaintiff, which placed the ground of recovery solely on negligence in furnishing an unfit tool. Moreover, this refused instruction was properly refused, for under the evidence and the law as applied to it, there was no question here of "fellow-servant." It is true that whether one is a fellow-servant is an issue of fact, to be submitted to and determined by the jury; but that implies that there must be some

substantial evidence that the parties were fellow-servants. Here there is no testimony which properly could lead to any such conclusion. The chisel was furnished by the representative of the master, as was the duty of the master, and there is no evidence in the case that in furnishing it, the superintendent was a fellow-servant of the plaintiff. It is also to be said of this instruction asked, that it was misleading in tending to convey the idea that the accident occurred through the negligent handling of the chisel, which as we have seen was not the issue.

Instruction D sought to tell the jury that if they believed from the evidence that the risk of injury by using the chisel mentioned in the evidence was apparent to a person of ordinary care and prudence, then plaintiff assumed the risk incidental to his employment and their verdict must be for defendant. We do not think this instruction should have been given in the language in which it was asked. Its tendency was to mislead the jury in stating a mere abstract proposition of law without in this instruction or in any others advising the jury as to what constituted an assumption of risk incident to the employment.

Instruction marked E was to the effect that if the jury believed from the evidence that the piece of iron or steel which struck plaintiff's eye was detached from the rail which was being cut at the time mentioned in the evidence, plaintiff was not entitled to recover. There was no substantial evidence on which to rest this, and the fact that the jury must find that the piece of iron which hit plaintiff in the eye came from the head of the chisel, was so plainly and distinctly placed before the jury in other instructions given, that this instruction was unnecessary and its refusal not reversible error.

5. We think no error was committed in refusing to strike out all the testimony of plaintiff to the effect that the chip fell from the chisel, for the very sufficient

reason which was assigned by the learned trial court at the time he ruled on it, namely, while plaintiff had stated in his direct examination that such was the fact, the subsequent testimony explaining how he knew that fact was before the jury and the probative force of plaintiff's testimony was for their determination from all the other testimony in the case. We see no error in the action of the court in refusing this request.

6. There was some conflict in the testimony as to whether the place at which the witness Fache had thrown this chisel was nine hundred feet from the place of the accident. However much witnesses may differ on a question of distance, the material fact in this case was whether Fache had thrown this particular chisel away and had called the attention of the foreman to the defect in it. Where he threw it, or how far that was from the place where it was used or picked up, was entirely immaterial and there was no error committed in admitting the testimony of the witness Fache concerning what he had done with it, even if he contradicted himself or was contradicted about it by other witnesses.

7 and 8. We can discover no error whatever in the action of the court in sustaining the objection of plaintiff to the cross-examination of the witness Koutroules.

This disposes of the assignments of error *seriatim*.

Finding no reversible error, the judgment of the circuit court should be and is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.